21829

The STATE, Respondent, v. Ronald Raymond WOOMER, Appellant.
(299 S. E. (2d) 317)

*Deputy Appellate Defender David W. Carpenter,* of *S. C. Com'n of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Sr. Asst. Atty. Gen. Brian P. Gibbes,* Columbia, and *Sol. James O. Dunn,* Conway, *for respondent.*

Dec. 20, 1982.

GREGORY, Justice:

This appeal is from the sentencing retrial of appellant Ronald Raymond Woomer, who was sentenced to death by a jury. We consolidate his direct appeal with our mandatory review pursuant to S. C. Code Ann. § 16-3-25 (Cum. Supp. 1981) and affirm his sentence.

We previously affirmed Woomer's convictions of (1) murder of Della Louise Sellers; (2) assault and battery with intent to kill on the person of Wanda Summers; (3) criminal sexual conduct in the first degree on the person of Wanda Summers; and (4) two counts of kidnapping of Wanda Summers and Della Louise Sellers, in *State v. Woomer,* 276 S. C. 258, 277 S. E. (2d) 696 (1981). We refer to that opinion for a recitation of the relevant facts and proceed to address appellant's exceptions.

First, Woomer argues the use of the statutory aggravating circumstances of murder while in the commission of kidnapping violated the Eighth Amendment prohibition against arbitrary infliction of the death penalty

because the statutory definition of kidnapping is vague and overbroad. This issue was decided adversely to appellant's position in *State v. Smith*, 275 S. C. 164, 165, 268 S. E. (2d) 276 (1980). Furthermore, as in *Smith*, Woomer's conduct falls squarely within the statutory definition, thus he lacks standing to assert overbreadth.

Next, Woomer argues the trial court erred in excusing for cause juror James L. Faulk. Appellant concedes Faulk indicated he would not under any circumstances vote to impose the death penalty; however, "hoping that this Court might reconsider its position" in recent decisions rejecting arguments upon which appellant relies, appellant raises this exception. Rule 8, Section 10 of the Rules of Practice of the Supreme Court requires one to petition the Court in writing at least four days before the call of the case for permission to argue against a decision of this Court. Appellant did not petition this Court for this purpose; however, we consider his argument and adhere to our decisions in *State v. Adams*, 277 S. C. 115, 283 S. E. (2d) 582 (1981); *State v. Hyman*, 276 S. C. 559, 281 S. E. (2d) 209 (1981); and *State v. Linder*, 276 S. C. 304, 278 S. E. (2d) 335 (1981).

Thirdly, Woomer argues the trial court erred in admitting testimony of his commission on the same day of other crimes in Georgetown and Colleton Counties and testimony of his escape while in prison in West Virginia in 1973. Woomer contends admission of nonstatutory aggravating evidence runs a substantial risk that the jury will impose a death sentence as much based on nonstatutory aggravating factors as to statutory ones. We resolved the issue concerning evidence of other crimes Woomer committed on the same day in *State v. Woomer, supra.*

Testimony of Woomer's escape in West Virginia was offered in reply to appellant's testimony by three South Carolina prison officials regarding his good conduct while on death row in South Carolina. "[C]onsideration of the character and record of the individual offender and the circumstances of the particular offense [are] a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 2991, 49 L.Ed. (2d) 944 (1976). "[I]t is desirable for the jury to have as much information before it as possible when it

makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 204, 96 S. Ct. 2909, 2939, 49 L.Ed. (2d) 859 (1976). Both the accused and the State are entitled to a fair trial. We believe evidence of Woomer's prior escape was proper reply to his presentation of evidence of his good conduct while in prison in South Carolina.

Next, Woomer argues the trial court erred in allowing Dr. Galvarino, the State's psychiatrist, to testify Woomer would likely repeat acts of violence. Woomer contends his Fifth Amendment right to consult with an attorney were violated. *Estelle v. Smith,* 451 U.S. 454, 101 S. Ct. 1866, 68 L.Ed. (2d) 359 (1981) recognizes "a custodial interrogation conducted by a court-appointed psychiatrist raise[s] . . . the same concerns as a custodial interrogation conducted by a police officer and therefore must be preceded by the same warnings *Miranda* requires a police officer to give." *Battie v. Estelle,* 655 F. (2d) 692, 699 (5th Cir. 1981).

Woomer's attorney requested the psychiatric evaluation to determine Woomer's competency to stand trial and consented to the psychiatric examination to determine Woomer's criminal responsibility. Dr. Galvarino, Melvin Davis, a social worker employed by the South Carolina State Hospital, and T. V. Smith, a forensic psychologist employed there, testified they individually informed Woomer of his constitutional rights and that anything he said could be used against him in court. This fully complies with *Smith, supra,* and *Battie, supra.*

Woomer contends testimony concerning future dangerousness is not sufficiently scientifically reliable and admission thereof injected an arbitrary factor into the sentencing proceeding in violation of section 16-3-25(C)(1) of the Code. This Court is not required to vouch for reliability of the data or embrace any science methodology to answer this objection.

The State witness, Dr. Galvarino, was qualified as an expert and proceeded to depict the appellant's personality and to project his likely future behavior. In arguments outside the jury's presence, counsel generally characterized testimony by this witness as "nonsense" and "jibberish" while offering to the trial court a task force report of the American Psychiatric Association which critized predictive endeavors. The testimony was admitted, and counsel for appellant proceeded to

closely cross-examine the witness, confronting him with the report. Appellant later offered the testimony of Professor Paternoster of the University of South Carolina which was also highly critical of predictive psychiatry.

In short, the appellant's objection was addressed to the weight of the evidence and not to its admissibility. We are persuaded that the appellant effectively challenged the evidence of the State and was in no way prejudiced by its admission. The trial court exercised sound discretion in ruling on this matter.

We cannot speak as favorably about the remainder of Professor Paternoster's testimony. Appellant's primary purpose in offering his expertise was to convince the jury that capital punishment in general is not an effective deterrent. The State objected to the testimony on the ground that capital punishment as a public policy was established by the legislature and as such is not a proper matter to be placed before the jury. The objection should have been sustained. Since the date of this trial, we have several times advised the bench and bar that capital punishment as such and the method of execution are matters of legislative determination and judicial resources, such as the time of jurors, are not to be expended on matters not before the trial court. *State v. Thompson,* S. C., 292 S. E. (2d) 581 (1982); *State v. Plath,* 277 S. C. 126, 284 S. E. (2d) 221 (1981); *State v. Gilbert,* 277 S. C. 53, 283 S. E. (2d) 179 (1981). We assume these admonitions will be followed in the future.

Woomer further argues the trial court erred in refusing to declare a mistrial after Dr. Galvarino testified appellant told another doctor that he would rather have the electric chair. He contends this impermissibly introduced an arbitrary factor into the sentencing proceeding. We disagree.

The trial court gave adequate curative instructions to the jury. Moreover, the jury was fully aware of Woomer's desire to live. In his participation in the *voir dire* and closing argument, Woomer stressed his desire to live. This argument is without merit.

Next, Woomer argues the solicitor's closing argument informing the jury of the numerous procedural safeguards afforded a capital defendant lessened the jury's sense of responsibility by emphasizing that its responsibility was

shared by the legal system, thus the likelihood of a mistaken death sentence was decreased. The State argues this was intended to stress upon the jury the extreme importance of their decision, and it heightened rather than diminished their sense of responsibility.

The trial judge has wide discretion in dealing with the range and propriety of the solicitor's argument to the jury, and ordinarily his rulings thereon will not be disturbed. *State v. Durden,* 264 S. C. 86, 212 S. E. (2d) 587 (1975). This exception is without merit.

Woomer argues the trial court erred in defining reasonable doubt as "substantial doubt, doubt for which you can give a reason." This definition is well within the guidelines set forth in *State v. Butler,* S. C., 290 S. E. (2d) 1 (1982) and *State v. Griffin,* S. C., 285 S. E. (2d) 631 (1981).

Lastly, Woomer argues this Court's construction of section 16-3-25(C)(3) of the Code violates the Eighth Amendment requirement that capital punishment be imposed fairly, and with reasonable consistency, or not at all because it does not mandate comparative review of the death sentence on appeal with other factually "similar" cases, regardless of the penalty imposed. This issue was addressed in *State v. Copeland,* _____ S. E. (2d) _____ , Smith's Advance Sheets, Opinion No. 21808, filed November 10, 1982. We adhere to that decision.

In finding, as we do, that this case bears a strong resemblance to *State v. Shaw,* 273 S. C. 194, 255 S. E. (2d) 799, cert. denied, 444 U.S. 957, 100 S. Ct. 437, 62 L.Ed. (2d) 329 and *Roach v. South Carolina,* 444 U.S. 1026, 100 S. Ct. 690, 62 L.Ed. (2d) 660, we have no difficulty in concluding that the sentence of death is neither excessive nor disproportionate in light of appellant's crime and his character. In *Shaw, supra,* the codefendants robbed, kidnapped, raped and murdered in circumstances that starkly revealed the thoroughly malignant spirit in which those awesome acts were committed. The trial court in *Shaw, supra,* found insufficient the mitigating evidence of stunted intellect and voluntary inebriation. In the instant case, it is apparent that the jury was likewise unimpressed by appellant's showing in mitigation.

Two factual differences arise in comparing this case with *State v. Shaw, supra.* For one thing, appellant's accomplice committed suicide at the time of arrest. Secondly, one of the intended victims survived and was able to narrate the events at issue. Through her account and the testimony of eye-witnesses to the robbery, a chilling picture of ruthless criminality emerges. Appellant and his accomplice entered a small convenience store and, brandishing a shotgun and pistol, forced the owners into a corner. As unsuspecting customers entered the store, they and their small children were pushed and shoved, cursed, bullied and herded into the same rear area. After collecting all the available money, the robbers forced two women into their automobile and departed, offering vulgar threats to those left behind.

The victims were driven to a nearby woods where they were raped. The surviving victim was the object of appellant's brutal gratification which included perverted acts and demands that the victim utter obscenities in the process. After the rape episodes, appellant directed the two women to walk in front of him down a darkened road. He then fired the shotgun at them, wounding both. In the blast, the surviving victim suffered the loss of her entire lower jaw. Not surprisingly, this horrendous wound led appellant to conclude she was dead. The other victim was slightly wounded and had to be dispatched with a single pistol shot to the head as she lay on the ground screaming. The pistol in question was shown to have been stolen from the home of appellant's grandmother. She and her second husband were robbed at gunpoint by appellant's accomplice and another person who could not be identified because the elderly couple had been promptly locked in a closet.

In cross-examination of State witnesses, appellant sought to suggest to the jury that he may have been acting under the influence of drugs and/or alcohol. Clearly the jury was entitled to consider this testimony as well as the evidence of the State to the contrary. As noted above, the same excuse was offered in *State v. Shaw, supra.* We would add that the evidentiary showing in the latter case was far more substantial than the showing made here.

In mitigation, appellant offered the testimony of his mother. She related that appellant's father had had a drink-

ing problem and a disinclination to hold steady employment. She characterized her former husband as an insensitive man who exhibited little interest in his children. He enjoyed hunting but did not include the appellant except when appellant asked to go along. She expressed the view that her former husband was a harsh disciplinarian, sometimes using a belt on their sons and often sending them to their room. The nature of the misbehavior provoking these sanctions was not disclosed. Appellant's mother recalled with some vividness a particular incident when appellant was thirteen and had failed to feed the hunting dogs. He was sent to his room.

Appellant's mother and another witness, a girlfriend, both stated that they found the behavior proven at trial to be uncharacteristic of him. In the same vein, three officials of the South Carolina Correctional Institution testified that during appellant's close and safe confinement there he had not misbehaved.

The jury was fully instructed on all the mitigating circumstances available under section 16-3-20(c) of the Code. In addition they were given the benefit of an unsworn statement by the appellant in which he professed to have achieved peace of mind through religion and desired to be of future help to others. All things considered, we conclude that the jury made a correct determination in this case and that the sentence of death is neither excessive nor disproportionate in light of this crime and this defendant. Further, given that we have upheld a comparable sentence in the comparable case of *State v. Shaw, supra,* we are confident that the finding of this jury is by no means an aberration.

We have examined the entire record for prejudicial error and find none. Therefore, we affirm the sentence of death of Ronald Raymond Woomer.

Affirmed.

LEWIS, C. J., LITTLEJOHN and NESS, JJ., and JOSEPH R. MOSS, Acting Associate Justice, concur.