23064

STATE of South Carolina, Respondent v. Edward Lee ELMORE, Appellant.
(386 S. E. (2d) 769)

Supreme court

*John H. Blume, David I. Bruck, S. C. Office of Appellate Defense,* Columbia, and *Billy J. Garrett, Jr.,* Greenwood, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia, and *Sol. W. Townes Jones, IV,* Greenwood, *for respondent.*

Aug. 21, 1989.

CHANDLER, Justice:

Edward Lee Elmore (Elmore) appeals his third death sentence for the January 16, 1982, murder of Dorothy Ed-

wards.[1] This case consolidates his appeal with the sentence review mandated by S. C. Code Ann. § 16-3-25 (1985). We affirm.

## ISSUES

1. Did the Solicitor exercise peremptory challenges to strike black jurors in violation of *Batson v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986)?

2. Did the trial court err in qualifying juror Johnson and in refusing to qualify juror Watkins?

3. Did the trial court err in refusing to replace juror Jones with the alternate juror?

4. Did the trial court err in refusing to allow Elmore to introduce evidence regarding counsel's inadequate investigation?

5. Did the Solicitor's closing argument deprive Elmore of a fair sentencing trial?

## I. PEREMPTORY CHALLENGES

The jury which returned the death sentence consisted of eleven whites and one black. Although the Solicitor used peremptory challenges in striking two black jurors, he accepted the first black presented. Also, a black was seated as the alternate juror.

Elmore contends that the Solicitor exercised peremptory challenges in violation of *Batson v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986). We disagree.

Under *Batson*, the defendant has the burden of establishing a prima facie case of purposeful racial discrimination in the prosecution's selection of a jury venire. Once this showing is made, the burden shifts to the State to provide a racially neutral explanation for challenging black jurors.

Here, the trial judge found that Elmore did not make a prima facie showing of discrimination. This determination will not be reversed absent a showing of an abuse of discretion. *State v. Jones*, 293 S. C. 54, 358 S. E. (2d) 701 (1987); *State v. Smith*, 293 S. C. 22, 358 S. E. (2d) 389 (1987).

The *voir dire* of the 41 persons drawn must be viewed in its entirety. It must not be considered with focus upon three isolated examples. We disagree with the dissent that the

Solicitor's interrogation of potential jurors constituted a prima facie case of discrimination.

Moreover, the Solicitor presented a racially neutral explanation for challenging the two black jurors, to wit, their vacillating responses to his questions regarding the death penalty.

## II. QUALIFICATIONS OF JURORS

Elmore asserts error in the trial judge's refusal to disqualify juror Annie Johnson for cause. Failure to exhaust his peremptory challenges at trial, however, precludes his raising this claim on appeal. *State v. South,* 285 S. C. 529, 331 S. E. (2d) 775 (1985); *State v. Elmore,* 279 S. C. 417, 308 S. E. (2d) 781 (1983).

Elmore further contends the trial judge erred in disqualifying juror Grace Watkins for cause, based upon her statements during *voir dire* that she could not sign her name to a verdict that the defendant be sentenced to death.

A prospective juror may be excluded for cause if her views on capital punishment would prevent or substantially impair the performance of her duties as a juror. *State v. Kornahrens,* 290 S. C. 281, 350 S. E. (2d) 180 (1986) [citing *Wainwright v. Witt,* 469 U. S. 412, 105 S. Ct. 844, 83 L. Ed. (2d) 841 (1985)]. In view of her statements during *voir dire,* Mrs. Watkins was properly excused for cause. *See State v. Drayton,* 293 S. C. 417, 361 S. E. (2d) 329 (1987).

## III. REFUSAL TO REPLACE JUROR WITH ALTERNATE

Elmore next contends that the trial judge erroneously denied his request to remove Mattie Jones from the jury and to replace her with the alternate juror.

Mrs. Jones was accepted by the defense as a juror notwithstanding, in Elmore's presence, she was made aware during *voir dire* that Elmore had been found guilty of burglary and criminal sexual conduct at a previous trial. Following jury selection, Elmore moved to have her replaced due to her awareness of these convictions.

A defendant may not challenge for cause after accepting a juror with knowledge of an objection to qualification. *See*

*State v. Johnson*, 248 S. C. 153, 149 S. E. (2d) 348 (1966). Accordingly, the trial judge properly refused to remove Mrs. Jones.

### IV. EVIDENCE OF INADEQUATE INVESTIGATION

The trial judge refused to allow introduction of evidence that Elmore's case was inadequately investigated by counsel. Elmore contends this evidence constituted mitigation under *State v. Stewart*, 288 S. C. 232, 341 S. E. (2d) 789 (1986).

Elmore's reliance upon *Steward* is misplaced.

*Stewart* permits the introduction in the sentencing phase of any evidence previously presented in the guilt phase. Here, Elmore does not seek to represent guilt phase evidence. His claim falls within that of ineffective assistance of counsel, which must be reserved for post-conviction relief.

### V. SOLICITOR'S CLOSING ARGUMENT

Finally, Elmore contends he was denied a fair sentencing trial by the Solicitor's closing argument. Specifically he excepts (1) to comments concerning the victim and (2) to entreaties that the jury not "take the easy way out." We have reviewed the entire argument and find it to be within acceptable limits. *See State v. Bell*, 293 S. C. 391, 360 S. E. (2d) 706 (1987); *State v. Plath*, 281 S. C. 1, 313 S. E. (2d) 619 (1984).

### VI. PROPORTIONALITY REVIEW

Elmore's sentence is not arbitrary, excessive, or disproportionate. Additionally, the evidence supports the jury's finding of aggravating circumstances.

Affirmed.

GREGORY, C. J., and HARWELL and TOAL, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice, dissenting:

I respectfully dissent. In my view, the appellant established a prima facie showing of racial discrimination in the jury selection process, and the state failed to successfully

rebut the inference of discrimination in the exercise of its peremptory challenges. *See Batson v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986), and *State v. Jones*, 293 S. C. 54, 358 S. E. (2d) 701 (1987). *See also State v. Martinez*, 294 S. C. 72, 362 S. E. (2d) 641 (1987) (Ness, C. J., dissenting).

Appellant was sentenced to death by a jury of eleven white jurors and one black juror.[1] The state exercised only two peremptory challenges, both against black jurors. Appellant's counsel objected on the ground that the jurors were excluded because of their race. Although the trial court ruled that appellant had not established a prima facie case of discrimination, it required the state to set forth reasons for exercise of its peremptory challenges.

The record reveals that the solicitor's voir dire questioning evinces a more rigorous and detailed examination of black jurors. For example, the voir dire questioning of a black juror accepted by the state comprises approximately fifteen pages of transcript; whereas, the voir dire questioning for a white juror comprises approximately two pages.[2] Furthermore, a comparison of the context of the voir dire questions shows obvious disparate treatment of black and white jurors.[3] *See State v. Howard*, 295 S. C. 462, 369 S. E. (2d) 132 (1988) (Finney, A. J., dissenting). This type of questioning pervaded the entire voir dire aspect of appellant's trial.

In *Batson, supra,* the United States Supreme Court sought to restrict a prosecutor's use of peremptory challenges when such challenges are used against a potential juror "solely on account of . . . race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 106 S. Ct. at 1719. In *Batson,* the Supreme Court promulgated the following standard for determining whether a defendant has established a prima facie case of discriminatory jury selection. First, a defendant must show that he is a member of a cognizable

---

[1] One black person was also selected as an alternate juror.

[2] See Addendum, Pages A-1 through A-5, illustrating the voir dire questioning of jurors Richardson and Jones, respectively.

[3] See Addendum, Page A-6, for an example of one question posed to Ms. Jessie Bates, a black juror who was stricken by the state.

racial group and that the prosecutor exercised peremptory challenges to remove at least one member of the defendant's race from the venire. Second, a defendant may rely on evidence, as to which there can be no dispute, that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson*, 106 S. Ct. at 1723 (quoting *Avery v. Georgia*, 345 U. S. 559, 562, 73 S. Ct. 891, 892, 97 L. Ed. 1244 (1953)). Finally, a defendant must show that the aforesaid facts "and any other relevant circumstances raise an inference that the prosecutor used [the peremptory challenge] to exclude the veniremen from the petit jury on account of their race." *Batson*, 106 S. Ct. at 1723. *See also State v. Jones, supra*. The *Batson* court found that "relevant circumstances" include a discernible pattern of peremptory challenges and a prosecutor's questions and statements during voir dire questioning. *Batson*, 106 S. Ct. at 1723.

According to *Batson*, trial judges are given the discretion to determine whether a defendant has made out a case of purposeful discrimination. As guidance to the bench and bar with regard to implementing *Batson*, this Court has recently issued two opinions. In *State v. Jones, supra*, we recognized that the defendant is entitled to rely on the fact that peremptory challenges permit "those to discriminate who are of a mind to discriminate." In accord, we recently said in *State v. Oglesby*, 298 S. C. 279, 379 S. E. (2d) 891 (1989), "[I]n deciding if the defendant has carried his burden of persuasion, a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Being fully familiar with the record and cognizant of the discretion afforded trial judges, I find that appellant did, indeed, raise an inference of discriminatory exclusion as prohibited by *Batson*.

Having determined that the court erred in finding that appellant had not established a prima facie case, it becomes necessary to ascertain whether the solicitor rebutted the inference of discrimination in the exercise of the state's peremptory challenges. Once a defendant has made a prima facie showing of racial discrimination, the burden shifts to the state to articulate a racially neutral explanation for its challenges. *Batson, supra*.

In order to rebut a prima facie showing, a prosecutor must give a clear and reasonably specific "explanation of his 'legitimate' reasons" for exercising the peremptory challenges. *Texas Dept. of Community Affairs v. Burdine,* 450 U. S. 248, 258, 101 S. Ct. 1089, 1096, 67 L. Ed. (2d) 207 (1981). However, a racially neutral explanation need not rise to the level justifying exercise of a challenge for cause. *Batson, supra.* After the solicitor was required to present a racially neutral explanation for his jury challenges, he asserted that he relied on the advice of a Newberry County sheriff deputy and the assistant solicitor as sole justification for utilizing peremptory challenges against the black jurors. The state contends the fact that the two individuals upon whose advice the solicitor acted were black supports the theory that the solicitor's explanations were racially neutral. I find that this rationale does not serve as the basis for a racially neutral explanation nor does it give credence to any explanation for the exercise of peremptory challenges. Allowing the solicitor to articulate the advice of others as the basis of a neutral explanation leaves the Equal Protection Clause devoid of substance. In effect, the solicitor gave no clear and reasonably specific explanation as to why the black jurors were stricken, which is contrary to the equal protection premise forming the basis of the *Batson* decision. *Id. See also State v. Jones, supra.*

For the foregoing reasons, I would vacate appellant's death sentence and remand the case for a new sentencing proceeding.

## ADDENDUM
### Page A-1

As an illustration of the solictor's disparate treatment of black and white jurors, the following is a comparison of the solicitor's voir dire questioning of Barbara Richardson, a white juror, and Mattie Jones, a black juror, who were both seated.

### BARBARA RICHARDSON

SOLICITOR: Ms. Richardson, you were speaking with Defense counsel about some matters, and I know that you said that you would have to be certain that a person accused in

any given case was the one that actually committed the crime for which that person was accused. Let's assume we're talking about murder in a given case....

... I'd like to ask you this question, if your standard of proof—The Judge, of course, would, I assume, instruct you as to the law, and he might instruct you that it would be—that the state would have to prove its case beyond a reasonable doubt. His charge would be that to you. Would your certainty have to include that there was an eyewitness to the crime?

MS. RICHARDSON: No.

SOLICITOR: All right. But you would want an overwhelming and sufficient amount of evidence?

MS. RICHARDSON: I would want plenty of evidence, yes.

\* \* \* \* \* \*

SOLICITOR: I gather from your responses that you've been very straightforward with us and that you've given some thought to your answers, and I do appreciate that very much, Ms. Richardson.

MS. RICHARDSON: Yes sir.

\* \* \* \* \* \*

SOLICITOR: The State would present Ms. Richardson in this case.

\* \* \* \* \* \*

Page A-2

MATTIE JONES

SOLICITOR: Of course, if you were selected as a juror in any case, you would want to listen to all the evidence in determining what the proper punishment should be, is that correct?

MS. JONES: That's right.

SOLICITOR: And that's the way it should be. Of course, you realize the State has the burden of proof, do you not? The State of South Carolina is the one presenting the evidence and attempting to say that a particular individual is guilty of a crime. They have the burden of proving it.

\* \* \* \* \* \*

SOLICITOR: They have to prove to you, and that is beyond a reasonable doubt, that the defendant is guilty.

\* \* \* \* \* \*

SOLICITOR: Do you understand that? Reasonable doubt?

MS. JONES: Yes.

SOLICITOR: Then, in making your determination of whether or not the evidence presented is beyond a reasonable doubt, would you have to say that it's a hundred percent positively clear?

MS. JONES: That I understand, yes.

SOLICITOR: ... What is your understanding of "beyond a reasonable doubt"?

MS. JONES: Beyond a reasonable doubt? ...

THE COURT: That's impossible to answer. ...

\* \* \* \* \* \*

SOLICITOR: Let me ask you this. ... Do you believe that there are murders where life imprisonment is appropriate? Certain murders where life imprisonment is an appropriate punishment?

MS. JONES: Yes.

### Page A-3

SOLICITOR: And you also believe that there are murders where the appropriate punishment is death by electrocution?

MS. JONES: If they show any evidence that they committed it and whatever. You know, listen to it and know the whole truth about it, and everything.

SOLICITOR: Yes ma'am. That's what I'm asking you. I'm trying to get your feelings, like I say, your honest responses to us. Then, after you hear all the evidence in a case, if the case were such that you feel that you personally could recommend that the sentence to be imposed upon a defendant would be death by electrocution?

MS. JONES: After having all the evidence, yes.

SOLICITOR: All right. And could you also go so far as to sign your name to a piece of paper stating that that is your recommendation, that the defendant would be sentenced to death by electrocution?

MS. JONES: Yes.

SOLICITOR: You have no religious belief that would prevent you from carrying out that duty?

MS. JONES: No.

SOLICITOR: You have no personal belief that would prevent you from carrying out that duty?

MS. JONES: No.

\* \* \* \* \* \*

SOLICITOR: And you do feel that in certain cases, there are certain murders where that [death] is the appropriate punishment?

MS. JONES: I do.

SOLICITOR: Now in deliberating—And in deliberating, you said you recognized that the facts must be proven to you; is that correct?

MS. JONES: That's correct.

SOLICITOR: And you're talking about the facts of the crime, is that correct?

MS. JONES: Right.

Page A-4

SOLICITOR: So you want the facts of the crime proven to you beyond a reasonable doubt, is that correct?

MS. JONES: Well, if he's committed them, yes.

SOLICITOR: In determining whether he's committed them, you'd use His Honor's instructions that proof would have to go beyond a reasonable doubt?

MS. JONES: Yes.

\* \* \* \* \* \*

SOLICITOR: But if the State established that proof, then you would be able to, if the State, in a particular case, weighing out both the mitigation and the aggravation, if you determined that the aggravation was such that it was such a type of murder that required a death by electrocution, you would be able to sign your name and you would sign your name to a piece of paper stating that your decision that the penalty should be death by electrocution?

MS. JONES: Yes.

SOLICITOR: Ms. Jones, I had one question I wanted to ask you, and that was: During the course of any presentation of evidence in a case—As His Honor mentioned to you, prior to this there was a finding by another jury of guilt of the Defendant. Do you follow that?

MS. JONES: Yes sir.

SOLICITOR: So you understand that another jury has decided that the Defendant is guilty of murder?

MS. JONES: Yes.

SOLICITOR: Do you understand that?

MS. JONES: I understand.

SOLICITOR: And you're going to be considering testimony to decide whether that was the type murder that was aggravated to the extent that it warrants the imposition of the death penalty. Do you understand that?

MS. JONES: I understand.

\* \* \* \* \* \*

### Page A-5

SOLICITOR: You kind of go with the majority, or do you stand your own ground?

MS. JONES: I listen to see what other people are saying, but, you know, I usually have a say-so. I usually decide my own—have my own opinion about it.

SOLICITOR: Okay. So you have your own opinion about what something is, but you would also listen to the other people's opinions?

MS. JONES: Well, to a certain extent, I would listen, but I have my own decision.

\* \* \* \* \* \*

SOLICITOR: And what did you determine that you feel about the death penalty?

MS. JONES: Well, if the person committed the crime and they sentenced him to die in the electric chair, that I was agreed with them.

SOLICITOR: It didn't offend your sensibilities as a human being?

MS. JONES: No.

### Page A-6

This is an example of a question posed to Ms. Jessie Bates, a black juror, who was stricken by the state.

SOLICITOR: ... I want you, if you will, to think about it [imposing the death penalty] for a minute, because in any case that you might be on, you might have to make that decision, and you'd want to be sure in your heart and your mind and your conscience that you would be able to make

that decision. I want you to think about it for a minute. You've got aggravating circumstances and mitigating circumstances in a murder, any particular murder, and then of course the jury would deliberate. But what I wanted to know is: In a particular case, if you weighed the evidence—and you think about it before you answer and let me know if Jessie Bates would be able, if you weighed the evidence and determined that the evidence would warrant the death penalty, would Jessie Bates be able to take part and be a part of recommending that someone be sentenced to death by electrocution in the electric chair and be part of that and write your name down on a piece of paper stating that you would be a part of recommending that somebody die in the electric chair? I just want to know if you had thought about it and if you were sure that if the circumstances were appropriate, that you would be able to do that, in your own conscience and your own mind and heart? I just want to know how you felt about that, because if you were called on to do that, it might be possible that you'd be required to do that, and we wouldn't want you to be put in the position of doing anything that you couldn't do. I want you to think about it, if you would, and let me know if you could and would do that.