23269

The STATE, Respondent v. Raymond PATTERSON, Jr., Appellant.

(396 S.E. (2d) 366)

Supreme Court

*John D. Delgado* and *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard June 6, 1990.

Decided Sept. 17, 1990.

CHANDLER, Justice:

In 1985, Appellant Raymond Patterson (Patterson) was convicted of murder and sentenced to death. This Court affirmed the conviction, but remanded for resentencing. *State v. Patterson,* 290 S.C. 523, 351 S.E. (2d) 853 (1986). Patterson was resentenced to death and we affirmed. *State v. Patterson,* 299 S.C. 280, 384 S.E. (2d) 699 (1989).

On January 9, 1990, 110 S. Ct. 709, the United States Supreme Court granted certiorari and remanded to this Court for further consideration in light of *Griffith v. Kentucky,*[1] which held that *Batson v. Kentucky*[2] applies retroactively to cases pending on direct appeal or not yet final.[3]

---

[1] 479 U.S. 314, 107 S. Ct. 708 93 L. Ed. (2d) 649 (1987).

[2] 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986).

[3] *Batson* was decided April 30, 1986. Patterson's direct appeal was decided December 29, 1986.

## ISSUE

The sole issue is whether a *Batson* violation occurred during Patterson's 1985 trial.

## DISCUSSION/FACTS

*Batson* holds that the State may not exercise peremptory jury strikes in a racially discriminatory manner. Upon a *prima facie* showing of discrimination, the burden shifts to the State to articulate a racially neutral reason for the challenge. 476 U.S. at 97, 106 S. Ct. at 1723, 90 L. Ed. (2d) at 88. The Trial Court must then determine whether the defendant has established purposeful discrimination. "Since the trial judge's findings . . . largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." 476 U.S. at 98, n. 21, 106 S. Ct. at 1724, n. 21, 90 L. Ed. (2d) at 89, n. 21. (Citation omitted.)

Patterson is black. The State exercised a peremptory challenge to strike the only black juror qualified, Emiline Leaphart. The Solicitor explained that he had placed Leaphart in the same category as a white juror, Susan Smith Enlow, who was also struck. He noted that black law enforcement officers participating in jury selection agreed that Leaphart should be struck. Patterson's trial counsel admitted that Leaphart was a juror favorable to the defendant, irrespective of color; the Trial Judge remarked that "she was somewhat of a weak juror. . . . I believe the State would have stricken a juror of that type had they been white or black."

Patterson nevertheless maintains that the State's articulated reason was pretext, in that Juror Leaphart expressed less reticence to impose the death penalty than did Juror Enlow.

Admittedly, Juror Enlow's *voir dire* testimony reveals a reluctance to impose a death sentence. However, she stated there was no reason she could not vote for the death penalty and could do so if the facts warranted. Although Juror Leaphart maintained no opposition toward capital punishment, her *voir dire* responses vacillated. When asked whether, after hearing evidence justifying the death penalty, she could impose such a sentence, she stated "I still would have to wait."

In two recent decisions, we addressed alleged *Batson* violations in which the defendant contended the State's articulated reason for a jury strike was pretext.

In *State v. Oglesby*, 298 S.C. 279, 379 S.E. (2d) 891 (1989), the State's reason for striking three black females was that each had been a patient of a doctor who was to be a witness at trial. We found the stated reason racially neutral; however, when the Solicitor seated a white juror who had also been treated by the same physician, he flawed the very criterion upon which the black jurors were struck.

Contrasted with the obvious, conspicuous *Batson* violation in *Oglesby* are the facts controlling our recent decision in *State v. Woodruff*, 300 S.C. 265, 387 S.E. (2d) 453 (1989). There, we recognized the often subjective nature of juror *voir dire* responses in capital cases, and the dilemma facing solicitors who must select jurors willing to impose the death sentence under appropriate circumstances.

The citizen-juror in capital cases, confronted with being a participant in the sentencing to death of a human being, comes face to face with a decision both awesome and agonizing. An individual juror's *voir dire* responses may vacillate between extreme opposition to the death penalty, on the one hand, and willingness to impose it, on the other.

In *Woodruff*, we stated:

> Given the severity of capital punishment, coupled with the searching *voir dire* interrogation pursued by solicitors and defense counsel, it is understandable that juror responses regarding the death penalty are frequently marked by inconsistency and vacillation. We hold that, under such circumstances, the solicitor may view the entirety of a juror's *voir dire* responses in determining whether to accept or reject a prospective juror. Where, as here, the responses are susceptible of more than one conclusion, we decline to substitute our own opinion for that of the Solicitor.

300 S.C. 267, 387 S.E. (2d) at 454.

We reaffirm *Woodruff* and emphasize the distinction between the objectively discernable violation in *Oglesby* versus

the decision of a Solicitor to strike a juror based upon his interpretation of that juror's subjective responses.

Here, the Solicitor's rationale for striking Juror Leaphart is supported by the record and its reasonable inferences. Accordingly, there was no *Batson* violation.

Affirmed.

GREGORY, C.J., and HARWELL and TOAL, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice, dissenting:

I respectfully dissent. In my opinion, the state's articulated racially neutral reason for striking Emmiline Leaphart (Leaphart), the sole black prospective juror, was clearly a pretext, unsupported by the record, and warrants reversal. The pertinent portion of Leaphart's *voir dire* follows.

> Court: So you see we have got three groups. One is for the death penalty; one is against the death penalty and the other is sort of what we call the don't know. In other words, they would want to wait and hear the testimony before they decided whether or not to recommend the death penalty. Now, which category do you feel that you would fit?
> Leaphart: I had rather wait and hear the facts and all the evidence in the case.
> Court: And if after hearing all the evidence in the case, where the State presents its testimony from witnesses on the stand and where the defense presents testimony from witnesses on the stand and that evidence justifies the death penalty, based on that evidence, could you vote to give the defendant the death penalty.
> Leaphart: I still would have to wait.
> Court: But, if the evidence warranted it, could you vote to give a defendant the death penalty?
> Leaphart: Yes.

Leaphart unambiguously stated "yes" when asked whether she could vote to give the death penalty if warranted by the evidence after earlier stating that she would rather wait and

hear the facts and evidence. Apparently, the majority places great weight on Leaphart's prior response that she ". . . still would have to wait." I find this answer neither vacillatory nor an indication of weakness. It merely placed her in the category of white jurors who were seated after stating they would wait to hear the testimony before deciding whether they could recommend the death penalty. Additionally, it is my opinion that Leaphart's answer was responsive to the court's question and in accord with South Carolina law that jurors should wait to decide whether or not to recommend the death penalty until after all the evidence is in and the judge has charged the applicable law.

Furthermore, in my view this case is distinguishable from *State v. Woodruff*, 300 S.C. 265, 387 S.E. (2d) 453 (1989). In *Woodruff*, as in the present case, the state's articulated neutral reason for striking prospective black jurors was the jurors' reluctance to impose the death penalty. But in *Woodruff*, one stricken juror clearly opposed capital punishment and the other insisted upon imposing the death penalty only if no doubt existed. My reading of Leaphart's testimony reveals no scintilla of reluctance or vacillation in her *voir dire* responses.

I would hold that the lack of distinction between Leaphart's position and the stance of white jurors seated by the solicitor flawed his stated criterion. In my opinion, the solicitor's articulated racially neutral reason pales under the weight of his acceptance of white jurors which the record indicates expressed the same view as did Leaphart. *See State v. Oglesby*, 298 S.C. 279, 379 S.E. (2d) 891 (1989). Thus, his peremptory challenge of Leaphart on the obvious basis of race violated *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986).

I would reverse and remand for a new sentencing phase proceeding.