23425

The STATE, Respondent v. William H. BELL, Jr., Appellant.
(406 S.E. (2d) 165)
Supreme Court

*Assistant Appellate Defender Tara Dawn Shurling,* of the *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Miller W. Shealy, Jr.,* Columbia, and *Sol. George M. Ducworth,* Anderson, *for respondent.*

Heard Sept. 25, 1990; Decided June 24, 1991.

Rehearing Denied July 24, 1991.

GREGORY, Chief Justice:

Appellant was convicted of murder and armed robbery and was sentenced to death. We affirm.

The victim in this case, Dennis Hepler, was the principal of West Franklin Street Elementary School in Anderson, South Carolina. His body was found outside the school around 1:00 o'clock a.m. on September 1, 1988. He had been shot twice with a .25 caliber pistol, once in the back and once in the back of the head. Appellant's fingerprints were found on the victim's red car which was parked on the street in front of the school. Two witnesses from a nearby apartment complex placed appellant in the area between 10:00 and 11:00 o'clock p.m. on August 31 with John Glen and Kevin Young.

Appellant was arrested on the night of September 1. That night, he gave police officers the first of four statements in which he denied ever having been at the West Franklin Street School. On September 3, appellant asked a guard at the detention center to contact the arresting officers. Appellant then gave a second statement. He stated he was walking near the school with John Glen and Kevin Young. Appellant stopped to talk with a girl. When he rejoined his friends, John Glen was inside a red car that was parked in front of the school and was trying to remove a cassette player. At Glen's request, appellant held the car door open. A man came out of the school and shouted at them. Kevin Young stepped from behind a wall in front of the school and shot the man in the back. While appellant and Glen ran from the scene, they heard a second gunshot. When Young caught up with them, the three obtained a ride with a fourth youth. Young threw the gun into some bushes in front of his house.

On September 4, appellant gave two more statements. First, he told police officers that he, Young, and Glen were walking on the school grounds on the night of August 31. Appellant and Glen attempted unsuccessfully to get the cassette player out of the car. They heard the sound of a door opening and joined Young behind a wall near the school building. Young said, "The man probably has a wallet." When a man came out of the school, Young moved behind him and told him to relinquish his wallet. The victim complied and Young shot him in the back. The gun jammed. The victim begged them not to shoot him again. Young shot again. The three fled the scene and obtained a ride with a fourth youth. They split $67.00 from the wallet, $20.00 for each of the three and $7.00 for the driver of the car, and threw the wallet out of the car.

Finally, appellant gave a fourth statement essentially identical to the third except that it states he took the gun from Young after it jammed, unjammed it, and shot the victim himself. All four statements were admitted into evidence after an extensive *Jackson v. Denno*[1] hearing. Appellant did not testify at either phase of the trial.

---

[1] 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908 (1964).

## GUILT PHASE

First, appellant claims the Solicitor violated *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986), in the exercise of a peremptory strike against Juror Galloway. The Solicitor explained this strike by stating Juror Galloway "appeared to be very weak on the death penalty." He noted her reluctance to answer death penalty voir dire questions and the fact she had several children about the same age as appellant and concluded she would have a difficult time returning a death sentence. Appellant claims this articulated reason was merely pretext because white jurors were seated who expressed reservations about capital punishment or who had children near appellant's age.

The record discloses that in response to questions regarding her ability to choose a death verdict, Juror Galloway indicated at various points she could not give a definite answer. At one point during questioning she stated, "I believe it's wrong for someone to take somebody else's life." In context, it is unclear whether this statement referred to the offense committed or the jury's verdict. Ultimately, however, she told the judge she could vote for the death penalty and she was not challenged for cause.

Vacillating responses to voir dire questions regarding the death penalty will support the use of a peremptory strike against a *Batson* challenge. *State v. Elmore*, 300 S.C. 130, 386 S.E. (2d) 769 (1989). Where the Solicitor perceives a person will have difficulty imposing the death penalty, he may exercise a peremptory challenge against the juror upon this ground as a racially neutral reason. *State v. Green*, — S.C. —, 392 S.E. (2d) 157 (1990). Such a challenge is proper even if the juror merely expresses scruples against the death penalty that would not be sufficient to excuse him or her for cause. *Id.* The record supports the Solicitor's reason for his strike based on Juror Galloway's responses on voir dire regarding the death penalty. Seated jurors with children appellant's age did not vacillate regarding the death penalty. Moreover, this Court has repeatedly declined to substitute its judgment for that of the Solicitor regarding subjective responses to death penalty voir dire questions in the face of claims comparable white jurors were seated. *State v. Patterson (Patterson II)*, — S.C. —, 396 S.E. (2d) 366 (1990); *State v. Woodruff*, 300 S.C. 265, 387 S.E. (2d) 453 (1989).

Appellant next challenges the propriety of the trial judge's opening remarks to the jury regarding credibility. The trial judge stated:

However, if this case is as the usual case of this nature that's tried in this court, *there may be certain conflicting or contradicting testimony in the case.* Now, how are you as a jury going to determine what true facts are from conflicting, if there should be any, or contradicting testimony? You will do that by using your good judgment and common sense, and by passing upon the credibility or believability, that's what credibility means, believability of the witnesses.

Appellant claims these remarks reflected adversely on his right to remain silent.

The test to determine the propriety of the trial judge's charge is what a reasonable juror would have understood the charge to mean. *State v. Rothell,* 301 S.C. 168, 391 S.E. (2d) 228 (1990); *State v. Patterson (Patterson I),* 299 S.C. 280, 384 S.E. (2d) 699 (1989). We find a reasonable juror would not have interpreted this remark in any way other than as a guide to determine credibility when necessary. Further, the trial judge clearly charged at the close of the evidence in both the guilt and sentencing phases that the jury was not to consider appellant's failure to testify.

Appellant complains the solicitor improperly defined "reasonable doubt." In his opening statement the solicitor stated, "Reasonable doubt is not just any fanciful doubt. It is a very substantial, it's a substantial doubt." This Court has held it is not error to define a reasonable doubt as a substantial doubt. *State v. Woomer,* 278 S.C. 468, 299 S.E. (2d) 317 (1982); *State v. Butler,* 277 S.C. 452, 290 S.E. (2d) 1 (1982). We need not address whether this definition violates the recent holding of the United States Supreme Court in *Cage v. Louisiana,* 498 U.S. —, 111 S. Ct. 328, 112 L. Ed. (2d) 339 (1990). The trial judge defined reasonable doubt as "just what the term implies, a reasonable doubt." The judge's charge cures any error in the Solicitor's statement of the law. *State v. Jones,* 298 S.C. 118, 378 S.E. (2d) 594 (1989).

Appellant contends his statements should have been suppressed. At the *Jackson v. Denno* hearing, all the police officers testified that appellant was given his *Miranda*[2] warnings and waived his rights before each statement, that he acted voluntarily, and that he did not request an attorney. Appellant's testimony at the hearing does not deny this. Appellant claims, however, the statements should have been suppressed because the State did not bring him before a magistrate "as soon as practicable" as required by the Defense of Indigents Act, Supreme Court Rule 51(A).

> Rule 51(A) requires:
> Every person arrested for commission of a crime . . . shall be taken as soon as practicable before [a designated official] for the purpose of securing to the accused the right to counsel.

Appellant was arrested on Thursday night and taken before a magistrate on Monday. Appellant claims the delay denied him procedural safeguards in violation of due process.

This Court has specifically held a violation of this procedural rule does not require suppression of any confession so long as the confession is voluntarily given after *Miranda* warnings are issued. *State v. Bishop*, 256 S.C. 158, 181 S.E. (2d) 477 (1971). There is no evidence the statements were involuntary or that the appropriate warnings were not given. Appellant was repeatedly advised of his right to counsel and waived it each time he gave a statement. Even if the delay violated Rule 51(A), appellant has shown no prejudice.

Appellant challenges the trial judge's charge on several grounds. Appellant was indicted for armed robbery for taking the victim's wallet containing $67.00. The trial judge submitted both armed robbery and robbery to the jury. Appellant claims the jury could have found him guilty only of "attempted larceny" for the unsuccessful attempt to remove the cassette player from the victim's car as stated in his second statement to police.

Appellant was not indicted for unlawfully taking any property other than the victim's wallet. A conviction for larceny of

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966).

the cassette player based on the indictment for robbery of the victim's wallet would have been invalid. *State v. Munn*, 292 S.C. 497, 357 S.E. (2d) 461 (1987). Moreover, defense counsel repeatedly asked the trial judge not to submit larceny to the jury. This exception has no merit.

Appellant further claims the trial judge inadequately charged the jury on accomplice liability. The trial judge charged the jury as follows:

> Now, I'm going to charge you the hand of one is the hand of all. Now, as to the law that the hand of one is the hand of all and that all could be guilty of the acts of others, before you could find the Defendant guilty of murder you would have to find beyond a reasonable doubt from all of the evidence presented *that two or more persons committed armed robbery or robbery and that the two or more persons have conspired together or planned together to do such by either verbal agreement or shown by their concerted act or acts.*
>
> You would further, you would have to find beyond a reasonable doubt that the two or more persons were knowingly together and either acting together or assisting together or participating together in the commission of the offense, and *you should further find that a killing or homicide was a natural or probable consequence of the unlawful armed robbery or robbery.* All that beyond a reasonable doubt. If so, then the law is that under these or those circumstances, the act of one is the act of all; the hand of one is the hand of all.

First, appellant contends the charge did not clearly instruct the jury that in order to be convicted of armed robbery under a theory of accomplice liability, the jury would have to find appellant combined with others to commit the armed robbery rather than a lesser crime. To the contrary, we find the underscored language of the first paragraph of the charge permits the jury to find appellant guilty only of whichever act he combined with others to commit, armed robbery *or* robbery. This charge is adequate under the reasonable juror standard. *State v. Rothell, supra; Patterson I, supra.*

Second, appellant claims the charge was defective because it did not instruct the jury to find the killing was a natural and

probable consequence of the specific act appellant combined with others to commit. *See State v. Peterson*, 287 S.C. 244, 335 S.E. (2d) 800 (1985). We disagree. The underscored language of the second paragraph of the charge instructs the jury it must find the killing was a natural and probable consequence of whichever act appellant was an accomplice to, armed robbry *or* robbery. This charge is adequate under the reasonable juror standard. *State v. Rothell, supra; Patterson I, supra.*

Appellant complains the trial judge improperly defined malice as "the doing of a wrongful act intentionally and without just cause or excuse." He claims the instruction created an unconstitutional burden-shifting presumption. We disagree. The trial judge's definition of malice is correct, *State v. Judge*, 208 S.C. 497, 38 S.E. (2d) 715 (1946), and the charge given is devoid of any presumption. Moreover, the trial judge clearly instructed the jury it was the State's burden to prove malice.

## SENTENCING PHASE

Appellant claims the trial judge's refusal to require the State to try him with his codefendant Kevin Young deprived him of the opportunity to present evidence in mitigation by allowing the jury to observe Young's demeanor.

The sentencing jury in a capital case may not be precluded from considering as mitigating evidence any aspect of the defendant's character or record and any circumstances of the crime that may serve as a basis for a sentence less than death. *Hitchcock v. Dugger*, 481 U.S. 393, 107 S. Ct. 1821, 95 L. Ed. (2d) 347 (1987); *State v. Cooper*, 291 S.C. 332, 353 S.E. (2d) 441 (1986). A codefendant's "demeanor" does not fall within this category of evidence. The trial judge did not abuse his discretion in refusing appellant's motion for joinder.

Further, at trial, counsel proffered evidence that codefendant Young was previously convicted of assault and battery with intent to kill. Appellant claims the trial judge erred in excluding this evidence because it was relevant to two statutory mitigating circumstances submitted to the jury: (1) that appellant was merely an accomplice whose participation was relatively minor; and (2) that he acted under duress or the domination of another. S.C. Code Ann. § 16-3-20(C)(b)(4) and (5) (Supp. 1989).

Essentially, appellant's argument contesting the exclusion of Young's record rests on the hypothesis it was evidence regarding circumstances of the crime. Evidence relating to the circumstances of the crime is relevant in a capital sentencing proceeding if it provides "information relevant to the defendant's moral culpability." *South Carolina v. Gathers,* 490 U.S. 805, 812, 109 S. Ct. 2207, 2211, 104 L. Ed. (2d) 876, 883 (1989). We find the proffered evidence of Young's prior record, absent any evidence establishing its logical relevance to the circumstances of the crime, is not probative on the issue of appellant's moral culpability.

Appellant next claims that since the record contains no waiver of his "right" to have parole eligibility charged under *State v. Atkins,* 293 S.C. 294, 360 S.E. (2d) 302 (1987), the trial judge erred in failing to give the charge. In *Atkins,* this Court held a capital defendant tried under the Omnibus Criminal Justice Improvements Act *may request* that the jury be charged regarding parole eligibility. There is no requirement this charge be given absent a request and it is the defendant's burden to show a request was made.

Appellant further argues parole eligibility is relevant evidence in mitigation. To the contrary, this Court has held parole eligibility is *not* mitigating evidence. *State v. Patterson,* 299 S.C. 280, 384 S.E. (2d) 699 (1989).

Appellant claims the trial judge erred in failing to sua sponte declare a mistrial after the solicitor summarized the testimony of Dr. Morgan, a psychiatrist, as indicating appellant "would be likely to follow other violent leaders in committing violence" and that he is "prone toward violence." Appellant claims these comments are not supported by the record. We disagree.

Dr. Morgan testified on direct examination that appellant was average in his adaptability to prison life. On cross-examination, however, Dr. Morgan stated that if another prisoner were to provoke appellant, it was his opinion appellant would retaliate. He also stated appellant's character was that of a follower and if he attached himself to a leader inclined toward violence, he would follow. Based on this testimony, we find the Solicitor's remakrs were well within the record and were therefore proper. *State v. Caldwell,* 300 S.C. 494, 388 S.E. (2d) 816 (1990).

Appellant claims the trial judge's definition of "mitigating circumstance" did not allow the jury to consider the extensive mitigating evidence presented regarding appellant's character and background. In explaining mitigating circumstances, the trial judge charged the jury as follows:

Now, in addition to considering the statutory aggravating circumstance, you shall also consider each alleged statutory mitigating circumstance supported by the evidence. A statutory mitigating circumstance is a fact, detail, incident or occurrence which the General Assembly of South Carolina has declared by statute would render less severe, that is to mitigate, the offense of murder when that fact, detail, incident or occurrence accompanies that act of murder.

A statutory mitigating circumstance is one recognized by statute as a circumstance, which in fairness and mercy shall be considered as extenuating or as reducing the degree of moral culpability for the commission of the act of murder. *A mitigating circumstance, it should be noted, would not constitute either justification or excuse for the offense in question. Such a circumstance would simply lessen one's guilt, that is make him less blameworthy or less culpable.*

The trial judge then charged the jury regarding several statutory mitigating circumstances, including that appellant had no significant history of convictions for violent crimes. The judge also charged the jury to consider "other mitigating circumstances authorized or allowed by law that are supported by the evidence."

Appellant claims the underscored language of the charge focused the jury's attention on the circumstances of the crime to the exclusion of his character and background. We find, from the context of the charge, there is no reasonable likelihood this charge prevented the jury from considering any mitigating evidence in fairness and mercy. *Boyde v. California,* 494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. (2d) 316 (1990).

We have conducted the sentence review required by S.C. Code Ann. § 16-3-25 (1985) and conclude the evidence supports the jury's finding of an aggravating circumstance. We find the death sentence was not arbitrarily im-

posed and is proportionate to the penalty in similar cases. *See Patterson I, supra.*

Affirmed.

HARWELL, CHANDLER and TOAL, J.J., concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. In my opinion, the state's articulated racially neutral reason for striking prospective black juror Katherine M. Galloway (Galloway) was clearly a pretext, in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986), and *State v. Oglesby,* 298 S.C. 279, 379 S.E. (2d) 891 (1989). I would reverse.

The state claims Galloway was excluded because she "appeared to be very weak on the death penalty," based upon her answers to voir dire questions, and the fact that she had children of about the same age as the appellant.

According to this record, the state accepted white jurors whose answers bore a marked similarity to Galloway's. Additionally, white jurors seated by the state had children of about the same age as the appellant.

Following is the pertinent portion of Galloway's voir dire testimony.

> COURT: Are you in favor of the death penalty, opposed to it or just where do you sit?
> GALLOWAY: I—I believe in our legal system, and I feel when everything is brought to the court and presented to the court, I do believe in the jury selection, well, choosing a verdict. I don't really—can't say yes or no.
>
> .  .  .  .  .
>
> GALLOWAY: I believe it's wrong for someone to take somebody else's life.
> COURT: Well, could you, however—could you, just answer, not in this case, but if the facts were bad enough, could you return a death penalty?
> GALLOWAY: If all the evidence pointed to that person, I believe I could.
>
> .  .  .  .  .  .

COURT: And you could return a verdict that speaks the truth according to your finding either a life sentence or if it was, as you stated, the other way, a death penalty, you could do that? You could consider both?
GALLOWAY: I could consider them both.
COURT: Could you sign your name to a death penalty along with all the other twelve jurors?

. . . . .

GALLOWAY: I think it would be kind of difficult, but I— if I—if that's what we chose as a verdict—

. . . . .

STATE: Would the fact that the Defendant might be about the same age as some of your children might make it more difficult for you to vote for the death penalty?
GALLOWAY: That's hard to say. I don't—I, or [sic] course, think that I have a child that age. I sound ruthless when I say, but this is something that's happened that needs to be decided upon, and if I've been chosen as a juror, I would do my best with everybody else to be fair, and I would sign.

. . . . .

As an example, the voir dire testimony of one white juror, Grace Ann Gast, follows for comparison with Galloway's voir dire responses.

COURT: . . . What is your position on the death penalty?
GAST: I hadn't give it a whole lot of thought until I was called for this particular case. I know in South Carolina it has the death penalty in this state. Personally I feel if somebody admits to a crime that they have murdered somebody, then I feel like the death penalty is in order. If its—you know, the person maintains he's innocent, we have to go through and a group of twelve people decide, first of all, innocence or guilty, and then decide what the punishment should be, I have a personal problem with, you know, can I sit up there and be the person that says this man's got to die. I don't know—I don't know how I feel about that.

COURT: Would you auto—just automatically regardless of what the facts are, only return life imprisonment? Could you consider both sides?

GAST: I guess it gets down to the point of the moral issue. Even if we have all of this evidence and, you know, eleven other people in that room says, you know, yes, the death penalty on that, you know, I look at it I'm the last vote, hypothetical situation, would I be able to say, you know, put my vote in and say, yes. To me it's like playing God in some cases. I don't know. I've never been in that position. I don't know what I would do.

. . . . .

COURT: Let me ask you this, not about this case, talking about any case. If the facts were bad enough in any case, now not this one, if the facts were bad enough—

. . . . .

COURT:—could you return a verdict of death along with the other eleven jurors?

GAST: Possibly.

COURT: You could consider it?

GAST: Uh-huh.

. . . . .

Without posing any questions, the state accepted Juror Gast whose position was, in my view, more vacillatory than Galloway's. Thus, I would conclude that the state's "neutral" reason of excluding prospective jurors "weak on the death penalty" is a pretext for racial discrimination where, of two persons expressing similar viewpoints, the state accepts the white venireperson and rejects the black venireperson on the basis of her viewpoint. *See State v. Patterson*, (Patterson II), — S.C. —, 396 S.E. (2d) 366 (1990) (Finney dissenting).

The state's second articulated reason for striking Galloway was that she had children of about the same age as the appellant. Six white venirepersons had children of similar age, all of whom were accepted by the state. Of the six, three were excluded by the defense and three were seated on the jury. The state contends the appellant has not shown that the solicitor was aware of information concerning the ages of venirepersons' children. The record reflects that this information is fur-

nished on juror questionnaire sheets completed prior to the court term. I find ludicrous any suggestion that such information was not available to the state.

I would hold that the state's asserted racially neutral reasons for excluding black venireperson Galloway were a pretext for racial discrimination since the state accepted similarly situated white jurors. *State v. Oglesby, supra.* I would reverse.