22844

The STATE, Respondent v. Ronnie HOWARD and Dana Ricardo Weldon, Appellants.

(369 S. E. (2d) 132)

Supreme Court

464

*Deputy Chief Atty. Elizabeth C. Fullwood,* of S. C. *Office of Appellate Defense,* Columbia, *for appellant Ronnie Howard.*

*David I. Bruck,* Columbia, *Greenville County Public Defender H. F. Partee,* and *Stuart G. Anderson, Jr.,* Greenville, *for appellant Dana Ricardo Weldon.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, and *Sol. Joseph J. Watson,* Greenville, *for respondent.*

Heard June 8, 1987.

Decided Feb. 29, 1988.

GREGORY, Justice:

Appellants Howard and Weldon were tried jointly and convicted of murder, kidnapping, armed robbery, and conspiracy. Both were sentenced to death plus twenty-five years for armed robbery and five years for conspiracy. We affirm in part, reverse in part, and remand.

Appellants were convicted of murdering Chinh Le, a Vietnamese woman who disappeared upon leaving her place of work in Greenville, South Carolina, one night in August 1985. The victim's naked body was discovered several weeks later under kudzu vines near a road in an isolated area of

Greenville County. The body was partially decomposed and the exact cause of death could not be determined. Her white Ford Granada automobile was found in Columbia, South Carolina, some one hundred miles away.

### GUILT PHASE

Appellants claim error in the trial judge's refusal to quash the jury panel pursuant to *Batson v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986).

Both Howard and Weldon are members of the black race. Only one black juror was seated. The Solicitor used seven of his peremptory strikes to eliminate blacks from the jury. Upon appellants' motion, the trial judge found a prima facie showing of racial discrimination and held a *Batson* hearing for the Solicitor to offer explanations for striking those seven black jurors. Appellants contend the Solicitor's explanations were insufficient and the jury panel should have been quashed. We disagree.

*Batson* requires the prosecutor to articulate a neutral explanation for striking a juror related to the particular case to be tried. The explanation, however, need not rise to the level of justification for a challenge for cause. 106 S. Ct. at 1723. The Solicitor's articulated reasons concerned these jurors' perceived attitudes to the death penalty. On the record before us, we are satisfied that the trial judge's ruling complied with *Batson* and the motion to quash the jury panel was properly denied.

Appellants assert the trial judge erred in refusing to sever their trials. Both appellants gave confessions to police officers that were redacted before admission at trial. Neither appellant testified. Each contends the improper admission of his codefendant's confession at their joint trial violated his right of confrontation.

Howard's confession indicated that he and Weldon formulated a plan to find a lone female driver whom they could easily overpower to steal her automobile. They waited in a car alongside a road in Greer, South Carolina, until sometime after midnight when Weldon spotted a woman driving a white Ford Granada automobile. The two men followed her to a rural area. Howard, who was driving, bumped the rear of her vehicle when she stopped at a stop sign. When

the woman exited her car to inspect the damage, Howard brandished a handgun and forced her back into the car. Howard drove off in the victim's car and Weldon followed in the other car.

After driving around for some time, Howard stopped in an isolated area. Weldon pulled over and joined Howard in the victim's vehicle. The woman said she was Vietnamese. She did not seem to understand English very well. Howard pulled a piece of plastic over her head and held it tightly while Weldon punched her several times in the stomach.

After assuring themselves the victim was dead, they stripped her body and washed it with soft drinks from a grocery bag in the back of the car in order to eliminate fingerprints. The two men drove to another isolated area. They removed the body from the car, washed it again in a mud puddle, and flung it into an overgrown area of kudzu vines. They later disposed of the victim's clothes and personal effects in various garbage dumpsters in Charlotte, North Carolina, and abandoned her car in the parking lot of an apartment complex in Columbia, South Carolina.

Weldon's confession relates the same facts regarding his own and Howard's culpability. In its original form, however, it repeatedly refers to minor acts Howard told Weldon to do during commission of the crime. This statement was redacted to eliminate all inferences that Howard was the initiator of their criminal enterprise.

The issue before us concerns the admissibility of a nontestifying codefendant's statement that incriminates the defendant, a subject recently addressed by the United States Supreme Court in *Cruz v. New York*, 481 U. S. ____, 107 S. Ct. 1714, 95 L. Ed. (2d) 162 (1987).[1] The Court held:

> [W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant [citing *Lee v. Illinois*, 476 U. S. 530, 106 S. Ct. 2056, 90 L. Ed. (2d) 514 (1986)], the Confrontation Clause bars its admission at their joint

---

[1] In *Richardson v. Marsh*, 481 U. S. ____, 107 S. Ct. 1702, 95 L. Ed. (2d) 176 (1987), the Court held such a statement admissible if it is redacted to eliminate the defendant's name and all references to him. *Marsh* does not apply to this case because neither statement was thoroughly redacted.

trial.... Of course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient "indicia of reliability" to be directly admissible against him and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless. 107 S. Ct. at 1719.

We quote extensively here to emphasize that the United States Supreme Court has not condemned admission of a co-defendant's confession but has merely shifted the focus of analysis. Such a statement will no longer be considered reliable simply because some of the facts it contains "interlock" with the defendant's own statement. The presumption of unreliability that applies to a codefendant's statement will be overcome only if those portions of the statement concerning the defendant's participation are "thoroughly substantiated" by the defendant's own confession. *Lee v. Illinois,* 106 S. Ct. at 2064-65; *cf. State v. Martin,* 293 S. C. 46, 358 S. E. (2d) 697 (1987). Even when this analysis is not applied at trial to determine the statement's admissibility, on appeal the same analysis is appropriate to determine whether any Confrontation Clause violation was harmless. Appellants' statements mutually and completely substantiated each other. We hold any Confrontation Clause violation to either appellant was harmless.

Each appellant further contends there was no proof of the corpus delicti aside from his confession and the case should not have been submitted to the jury. This contention is without merit. Each codefendant's confession is independent proof of the corpus delicti of the crimes committed by the other codefendant.[2] Further, the circumstantial evidence in this case proves the corpus delicti of both murder and kidnapping. *See State v. Owens,* 293 S. C. 161, 359 S. E. (2d) 275 (1987).

Next, each appellant contends his confession should have been suppressed because it was taken in violation of his right to counsel. We disagree.

---

[2] An unavailable declarant's admission against penal interest is admissible under state law. *McClain v. Anderson Free Press,* 232 S. C. 448, 102 S. E. (2d) 750 (1958).

Howard first argues that his fifth amendment right to counsel was violated under *Edwards v. Arizona*, 451 U. S. 477, 101 S. Ct. 1880, 68 L. Ed. (2d) 378 (1981). *Edwards* requires that custodial interrogation cease once an accused requests counsel unless the accused himself initiates further communication with police. Howard claims the evidence does not establish that he personally initiated the contact which resulted in his confession.

Howard was arrested and questioned by FBI agents regarding other crimes. While in custody, he spoke with his federal probation officer, Heywood Polk. Polk then contacted the FBI to arrange the interview that resulted in Howard's confession to the murder of Chinh Le. Howard testified at the suppression hearing that he requested an attorney before speaking with Polk. The FBI agent testified to the contrary that Howard made no request for an attorney before voluntarily giving his statement. It is uncontested that Howard received *Miranda* warnings.

■ When there is conflicting evidence on the issue of voluntariness, it is for determination by the jury unless the trial judge finds the evidence must be suppressed as a matter of law. *State v. Adams*, 279 S. C. 228, 306 S. E. (2d) 208 (1983). We do not find as a matter of law that the confession should have been suppressed on the basis of Howard's assertion that he requested counsel. The trial judge properly submitted the issue of voluntariness to the jury with complete instructions that it must find beyond a reasonable doubt that Howard understood and waived his rights. We find no error.

■ Further, both appellants allege violation of the sixth amendment right to counsel under *Michigan v. Jackson*, 475 U. S. 625, 106 S. Ct. 1404, 89 L. Ed. (2d) 631 (1986). *Jackson* applied the *Edwards* rule to post-arraignment custodial interrogation. Once a defendant invokes his right to counsel at the initiation of adversarial judicial proceedings, he is not deemed to waive his right to counsel at subsequent custodial interrogation unless he initiates the contact even if no request for counsel is made to police. Appellants contend that because they were already represented by counsel regarding different offenses in North Carolina, FBI and South Carolina agents could not interrogate either of them without counsel present.

We reject this argument. We hold that *Jackson* does not apply to require the State to establish the waiver of a sixth amendment right to counsel when the defendant has invoked that right only for a different offense in a different jurisdiction. *See Hoffa v. United States*, 385 U. S. 293, 87 S. Ct. 408, 17 L. Ed. (2d) 374 (1966) (uncounseled post-indictment statement relating to separate offense admissible at trial for that offense without waiver); *United States v. Lisenby*, 716 F. (2d) 1355 (11th Cr. 1983); *Spence v. State*, 252 Ga. 338, 313 S. E. (2d) 475 (1984); *see also Connecticut v. Barrett*, 479 U. S. 523, 107 S. Ct. 828, 93 L. Ed. (2d) 920 (1987) (under fifth amendment analysis, request for counsel is effective only for purpose invoked).

Howard further complains his confession was induced by a promise to consolidate the armed robbery charges to reduce his time in prison. The assertion is not supported by the evidence. Howard, in fact, testified at the suppression hearing that he was not given any promises but merely had "impressions that they would work something out." There is no evidence to support Howard's contention that his confession was induced by a promise of leniency. *See State v. Peake*, 291 S. C. 138, 352 S. E. (2d) 487 (1987).

Finally, Howard contends he was deprived of his statutory right to be represented by two attorneys. S. C. Code Ann. § 16-3-26(B) (Supp. 1986). During the guilt phase, one of Howard's attorneys was notified that he had failed to file a Continuing Legal Education Compliance Report as required by Supreme Court Rule 53, § 7. This non-compliance status was corrected within a day and a half. The trial judge noted for the record that the trial had proceeded "as usual." Howard alleges no prejudice and we find none.

Weldon's remaining exception regarding the guilt phase of trial is without merit and is disposed of pursuant to Supreme Court Rule 23. *See State v. Felder*, 290 S. C. 521, 351 S. E. (2d) 852, 853 (1986) (alleged ineffective assistance of counsel not considered on direct appeal). Accordingly, appellants' convictions are affirmed.

## PENALTY PHASE

Appellant Howard first contends the trial judge erred in refusing to admit his federal parole records as mitigating evidence in the penalty phase of trial under *Skipper v. South Carolina*, 476 U. S. 1, 106 S. Ct. 1669, 90 L. Ed. (2d) 1 (1986). These parole records included copies of progress reports compiled by prison officials during Howard's incarceration and a presentence report containing his military record. Howard sought to introduce the parole records through his parole officer, Heywood Polk. After an *in camera* hearing, the trial judge ruled that Polk could not testify regarding Howard's prison or military records but could testify to his conduct as a parolee. Howard did not call Polk to testify before the jury.

The record on appeal includes no proffer indicating the parole records contained relevant mitigating evidence of Howard's future adaptability to prison life. *See State v. Patterson*, 290 S. C. 523, 351 S. E. (2d) 853 (1986). In fact, the only indication of the nature of information in these records is Polk's testimony that Howard had disciplinary problems as a parolee. We find no error under *Skipper v. South Carolina.*

Next, Howard contends the trial judge erred in allowing into evidence his confessions to approximately seventy other armed robberies and the murder of another victim by suffocation. These confessions were made contemporaneously with the confession to the crimes for which Howard was convicted during the guilt phase of this trial. He argues these confessions should have been suppressed on the same grounds raised in the allegations of guilt phase error. We affirm the trial judge's ruling for the same reasons cited in our discussion of guilt phase error.

Howard further complains these confessions should not have been admitted because the State failed to prove the corpus delicti of the crimes with corroborating evidence aside from the confessions themselves. We disagree. These confessions were not admitted to obtain Howard's conviction but were introduced in the penalty phase as evidence of other crimes relevant to the defendant's character. *See State v. Skipper*, 285 S. C. 42, 328 S. E. (2d) 58 (1985), rev'd on other grounds, 476 U. S. 1, 106 S. Ct. 1669, 90 L. Ed. (2d) 1 (1986);

472

*State v. Stewart,* 283 S. C. 104, 320 S. E. (2d) 447 (1984). We find no error in the submission of this evidence to the jury.

Next, Howard complains of the admission of two affidavits attached to arrest warrants for armed robbery charges in North Carolina. While admission of an affidavit in a criminal case is error, it is reversible only upon a showing of prejudice. *State v. Arther,* 290 S. C. 291, 350 S. E. (2d) 187 (1986). The information contained in these affidavits regarding Howard's participation in armed robbery is merely cumulative and we find no prejudice.

Howard next contends the solicitor's closing argument to the jury in the sentencing phase deprived him of a fair determination of punishment. Howard claims the solicitor improperly sought to lessen the jury's sense of responsibility, referred to Howard's failure to testify, and argued matters outside the record. It is clear from the record that when read in context the solicitor's remarks did not have this effect. *Cf. State v. Arther, supra* (solicitor's argument improper if it constitutes direct or indirect comment on defendant's failure to testify at penalty phase of trial); *State v. Yates,* 280 S. C. 29, 310 S. E. (2d) 805 (1982) (reference to deterrent effect of capital punishment not *per se* improper); *State v. Tyner,* 273 S. C. 646, 258 S. E. (2d) 559 (1979) (reference to mandatory appellate safeguard improper).

Howard further claims the admission of testimony regarding the victim's family life injected an arbitrary factor in the determination of his sentence. The only evidence regarding the victim's background was introduced at the guilt phase of trial as circumstantial evidence that the victim's sudden disappearance was not voluntary. *See State v. Owens, supra* (evidence of victim's habits and relationships used to establish corpus delicti of murder). The solicitor did not argue this evidence in closing at the penalty phase and we find no prejudice. *Cf. Booth v. Maryland,* ____ U. S. ____, 107 S. Ct. 2529, 96 L. Ed. (2d) 440 (1987) (admission of victim impact statement improper in capital sentencing proceeding).

Howard also claims the trial judge injected an arbitrary factor into the sentencing determination by conducting the proceeding past midnight on the night

before the jury rendered its verdict. The record indicates the jury elected to continue the proceeding when asked by the trial judge. There is nothing in the record to support Howard's claim of prejudice.

Finally, Howard claims his unredacted confession ■ should have been admitted as evidence in mitigation of punishment because it showed that Weldon rather than Howard played the major role in the victim's death. We have carefully reviewed Howard's complete confession and find no support for this view of the facts. Howard's confession, to the contrary, supports an inference that he actually was the leader and decision-maker. Because Howard's unredacted confession contained no mitigating evidence, we find no prejudice from its exclusion at the penalty phase of trial.

Appellant Weldon's confession, on the other hand, ■ contains evidence that he may have acted under Howard's domination to support the statutory mitigating circumstance charged to the jury. *See* S. C. Code Ann. § 16-3-20(C)(b)(5) (Supp. 1986). We find Weldon was prejudiced by the exclusion of his complete confession at the penalty phase, especially in the context of his case in mitigation attempting to show his character as one susceptible to domination. *See Skipper v. South Carolina, supra.* We therefore reverse Weldon's death sentence and remand for a new sentencing proceeding.

We caution the trial bench when considering a capital ■ defendant's motion to sever that the effect of a joint trial on each defendant at both the guilt and sentencing phases must be considered.

We have conducted the review of Howard's death ■ sentence required by S. C. Code Ann. § 16-3-25 (1985).

We find the death sentence was not arbitrarily imposed, the evidence supports the jury's findings of the aggravating circumstances of armed robbery and kidnapping, and the sentence of death is proportionate to the penalty imposed in similar cases. *See State v. Owens,* 293 S. C. 161, 359 S. E. (2d) 275 (1987); *State v. Koon,* 285 S. C. 1, 328 S. E. (2d) 625 (1984); *State v. Adams,* 279 S. C. 228, 306 S. E. (2d) 208 (1983). We find the death sentence neither excessive nor inappropriate in light of the circumstances of the crime and character of appellant Howard.

For the foregoing reasons, the convictions and sentences of both appellants are affirmed with the exception of Weldon's death sentence which is reversed and remanded for a new sentencing proceeding.

Affirmed in part; reversed in part; and remanded.

NESS, C. J., HARWELL, J., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.

FINNEY, J., concurring in part and dissenting in part, in separate opinion.

FINNEY, Justice, concurring in part and dissenting in part:

I concur with the majority's conclusion that appellant Dana Ricardo Weldon's death sentence be reversed and remanded for a new sentencing proceeding. It is at this point that my reasoning diverges from the majority's and I respectfully dissent. The majority's opinion fails to give proper weight to error committed during the trial, resulting in the affirmation of both appellants' convictions and appellant Ronnie Howard's (Howard) death sentence. I would reverse and remand these cases for a new trial.

I disagree with the majority that the appellant's motion to quash the jury panel was properly denied. The issue before this Court is whether the state rebutted appellants' prima facie showing of racial discrimination. The trial court qualified nine Black persons as prospective jurors. The state exercised peremptory challenges to strike eight of the nine Black persons. At the *Batson* hearing, the solicitor advanced the following reasons to justify the state's exercise of peremptory challenges:

(1) The prospective jurors were too young—ages twenty and twenty-three;
(2) The prospective jurors exhibited wavering support for the death penalty; and
(3) A prospective juror had an erratic work history and an unemployed spouse.

*See e.g., Batson v. Kentucky,* 476 U. S. 79, 106 S. Ct. 1712 (1986); *State v. Jones,* 293 S. C. 54, 358 S. E. (2d) 701 (1987).

The solicitor's articulated criteria for striking prospective Black jurors because of their ages and wavering support of

the death penalty were not applied to potential White jurors.[1] The same is true of the solicitor's peremptory challenges against Blacks predicated upon an unstable work history.[2]

Under the Equal Protection Clause, similarly situated persons are to be treated alike; and it prohibits prosecutors from striking potential jurors solely on account of race or on the assumption that Black jurors will not impartially consider the state's case against a Black defendant. *Batson v. Kentucky, supra. See also, People v. Hall*, 35 Cal. (3d) 161, 197 Cal. Rptr. 71, 672 P. (2d) 854 (1983); *People v. Wheeler*, 22 Cal. (3d) 258, 148 Cal. Rptr. 890, 583 P. (2d) 748 (1978). It is evident in this case that the solicitor did not use his peremptory challenges in a nondiscriminatory manner in that he excused youthful or unemployed Blacks but did not excuse similarly situated—youthful or unemployed—Whites.[3] Clearly, his actions violated the Equal Protection Clause under the Fourteenth Amendment.

It is most unfortunate that the majority concludes that the solicitor rebutted appellant's prima facie case in the face of a record which contradicts the state's articulated position. The affirmation of this case effectively undermines appellants' right to an impartial jury drawn from a representative cross section of the community. The majority's willingness to allow the state to prevail upon such blatantly inconsistent standards for its peremptory challenges leaves *Batson* and *Jones* without substance. *See e.g., State v. Martinez*, 294 S. C. 72, 362 S. E. (2d) 641 (1987) (Ness, C. J., dissenting). A prosecutor is required to show that he challenged similarly situated members of the majority group on

---

[1] The record reflects that the solicitor did not exercise peremptory challenges against five White jurors in their twenties; Emily Bagwell, twenty-two years old; Debra Badley, twenty years old; Tasha Mathis, twenty-two years old; and William Miller, twenty-five years old. Furthermore, the solicitor did not use peremptory challenges against White jurors who exhibited wavering attitudes about the death penalty or who could only impose it in extreme cases. For example, Juror Rohn testified that he was "really not certain" whether he could vote for the death penalty.

[2] The solicitor did not strike four White prospective jurors who had unstable work histories. For instance, he accepted one White juror who was unemployed at the time of the trial and another who had been employed at numerous jobs in past years.

[3] See Notes 1 and 2, and accompanying text.

476

identical or comparable grounds as members of the minority group. Compliance with this requirement establishes consistency in *Batson* hearings and provides a systematic means of determining bona fide neutral reasons for peremptory challenges. *See, Commonwealth v. Soares,* 377 Mass. 461, 387 N. E. (2d) 499 (1979). *See also, State v. Gilmore,* 103 N. J. 508, 511 A. (2d) 1150, 1168 (1986) (prosecutor's failure to challenge White jurors who did not meet his asserted criteria is highly probative in determining whether the prima facie case had been rebutted). Such consistency in the record would significantly curtail appellate review of this issue and insure the preservation of an accused's right to a fair trial by an impartial jury.

Accordingly, I would reverse and remand these cases for a new trial.