23489

The STATE, Respondent v. Richard Charles JOHNSON, Appellant.

(410 S.E. (2d) 547)

Supreme Court

122

*Stephen P. Williams* and *Daniel T. Stacey* both of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Sol. Randolph Murdaugh, III,* Hampton, *for respondent.*

Heard May 16, 1989; Decided Oct. 7, 1991.

Rehearing Denied Nov. 14, 1991.

TOAL, Justice:

Richard Charles Johnson was charged with the murder of a state highway trooper. Johnson was convicted and sentenced to death in February 1986. His conviction was reversed on ap-

peal. *State v. Johnson*, 293 S.C. 321, 360 S.E. (2d) 317 (1987). Johnson was retried in March 1988. The jury found him guilty of murder and sentenced him to death. This appeal followed. We affirm his conviction and sentence.

## FACTS

In September 1985, Dan Swanson (Swanson) was driving through North Carolina in his recreational vehicle (RV) on his way to Florida when he picked up Johnson, who was hitchhiking. The following day, Swanson and Johnson picked up hitchhikers Curtis Harbert (Harbert) and Connie Hess (Hess), alias Julie Smith, on Interstate 95. Johnson fatally shot Swanson, wrapped his body in a sheet, tied it with a stereo wire and concealed it under a mattress.

Johnson, Harbert and Hess continued their journey in Swanson's RV with Johnson driving. Johnson had been drinking liquor and began driving erratically. Several motorists noticed his reckless operation of the RV, including a truck driver who notified Trooper Smalls. The officer stopped the RV and during questioning, Johnson shot Smalls six times, killing him. This case involves the murder of Trooper Smalls only.

## A. JURY SELECTION

### 1. *Peremptory Challenges*

Johnson contends that the trial court erred when it allowed the Solicitor to use his peremptory strikes to remove jurors who expressed reservations about the death penalty. We disagree.

In *State v. Plath*, 277 S.C. 126, 284 S.E. (2d) 221 (1981), this Court specifically held that peremptory challenges may be exercised for any reason and, therefore, it is not possible for the defense to know if a juror is removed because of his opposition to the death penalty. We affirm *Plath* and, in doing so, note that this conclusion is supported by the reasoning set forth in Justice O'Connor's concurring opinion in denying certiorari in *Brown v. North Carolina*, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. (2d) 373 (1986).

> Peremptory challenges are limited in number. Each party, the prosecutor, and the defense counsel, must balance a host of considerations in deciding which jurors

should be peremptorily excused. Permitting prosecutors to take into account the concerns expressed about capital punishment by prospective jurors . . . in exercising peremptory challenges simply does not implicate the concerns expressed in *Witherspoon [v. Illinois,* 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968)].

*Brown,* 107 S. Ct. at 423-424.

## B. GUILT PHASE

### 1. *Disclosure of Immunity Agreement*

The State's nondisclosure of a promise of immunity to a material witness, when reliability is outcome determinative, may be a violation of due process. *State v. Hinson,* 293 S.C. 406, 361 S.E. (2d) 120 (1987), citing *Giglio v. United States,* 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. (2d) 104 (1972). Johnson contends that reversible error occurred when it was not disclosed that Harbert had been promised that he would not be prosecuted if he testified. Finding that there was no immunity agreement, we disagree.

Harbert was a material witness for the State. On cross-examination, he denied that any arrangement had been made concerning his agreement to testify in return for the dropping of murder charges against him. In addition, the former solicitor testified that Harbert was not prosecuted because the investigation had indicated that he was not guilty of any crime.

The court found that the former solicitor's testimony was consistent with Harbert's testimony that he had not been promised anything and that further testimony before the jury was not necessary.

We conclude that the court's ruling is fully supported by the record. The evidence indicates that no agreement was made concerning Harbert's immunity from prosecution.

### 2. *Evidence of Other Crimes*

Johnson argues that the trial court erred in allowing the State to introduce extensive evidence about Swanson's murder and robbery of his possessions on the grounds that the evidence was irrelevant and the prejudicial effect outweighed its probative value.

It is well settled that evidence of other crimes is generally inadmissible to prove the bad character of the accused to show that he acted in conformity therewith. Such evidence is admissible, however, when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan or (5) identity. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923). Even if the evidence is deemed admissible, however, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *State v. Alexander,* — S.C. —, 401 S.E. (2d) 146, 149 (quoting Fed. R. EVID. 403). The determination of prejudicial effect of the evidence must be based on the entire record and the result will generally turn on the facts of each case. *State v. Bell,* 302 S.C. 18, 393 S.E. (2d) 364 (1990), *cert. denied,* — U.S. —, 111 S. Ct. 227, 112 L. Ed. (2d) 182 (1990).

During the trial, the State introduced evidence concerning Swanson's murder in an effort to establish Johnson's motive and intent to kill Trooper Smalls. The evidence included the testimony of several witnesses. Harbert testified that (1) Johnson killed Swanson, (2) they stole Swanson's jewelry, (3) they wrapped Swanson's body in a sheet and concealed it under the mattress in the RV and (4) Johnson had stated that if they were stopped, he would kill a police officer so he wouldn't find the body.

The Chief of Police of Hardeeville testified that he found Swanson's body in the RV. Mrs. Swanson also testified as to the value of her husband's possessions, including the guns, jewelry and RV.

Connie Hess was not available for this trial. Therefore, portions from her testimony during Johnson's first trial were admitted into evidence. In this testimony, Hess stated that Johnson killed Swanson, took his possessions and stated that he would kill a police officer if they were stopped.

The testimony concerning Swanson's murder and Johnson's statements about killing an officer tends to establish Johnson's motive and intent for murdering Trooper Smalls. The testimony indicated that Swanson's body was concealed in the RV. One way to prevent an officer from conducting a search and finding the body would be to kill him. Therefore, this testimony was relevant to proving the crime charged.

Upon review of the record, we find that the prejudicial effect of the evidence did not outweigh its probative value. The evidence concerning Swanson's murder was the only evidence which established Johnson's motive and intent in murdering Trooper Smalls.

We also find, however, that Mrs. Swanson's testimony concerning the value of her husband's possessions was not relevant to proving the murder of Trooper Smalls and, therefore, is not admissible. Considering the minimal amount of testimony concerning the possessions and the lack of testimony by Mrs. Swanson concerning Swanson's murder, we conclude that the admission of this testimony constituted harmless error. *Cf. State v. Howard*, 295 S.C. 462, 369 S.E. (2d) 132 (1988).

### 3. *Instruction on Limited Use of Evidence*

Johnson argues that the trial court erred when it failed to instruct the jury as to the limited use of the evidence of the Swanson murder. Johnson contends that the court should have instructed the jury that the Swanson murder could only be considered to show Johnson's motive for killing the trooper.

The general rule is that when evidence of other crimes is admitted for a specific purpose, the judge is required to instruct the jury to limit their consideration of this evidence for the particular purpose for which it is offered. *See State v. Steadman*, 216 S.C. 579, 59 S.E. (2d) 168 (1950); *State v. Smalls*, 260 S.C. 44, 194 S.E. (2d) 188 (1973); 23 C.J.S. *Criminal Law*, § 1032(3). The reasoning behind this rule is to protect against a jury convicting a defendant just because he has committed other crimes and not because it has been proven that he is guilty of the crime for which he is accused.

An exception to this general rule was recognized in *State v. Nix*, 288 S.C. 492, 343 S.E. (2d) 627 (Ct. App. 1986). There, the Court of Appeals held that a limiting instruction is unnecessary where "evidence of the other crime is admissible on the main issue or where the evidence admitted to show motive or intent is of acts which may well be supposed to have been done in furtherance or [sic] such motive or intent." In *Corpus Juris Secundum* under the section discussing evidence of other wrongs it states that "[e]vidence which has a direct

bearing on, or relation to the commission of, the crime itself, so as to form part of the *res gestae,* is admissible without limiting instructions." 23A C.J.S. *Criminal Law* § 1208 (1989).

In the case at bar, the evidence of Swanson's murder forms part of the *res gestae.* The fact that a dead body was concealed in the back of the vehicle explains why Johnson would shoot the trooper when he opened the door. Furthermore, the other crime in this case was directly related to the murder of the trooper. The crimes were not totally unrelated as in most other cases wherein such evidence is introduced. For example, in *State v. Brown,* 296 S.C. 191, 371 S.E. (2d) 523 (1988), the Court held that failure to give a limiting instruction was reversible error where the evidence presented were prior criminal convictions offered for impeachment purposes. The distinction is that Brown's prior convictions had nothing to do with the crime for which he was being tried. Here, the evidence of Swanson's murder had a direct bearing on and related to the commission of the murder of the trooper such that it formed part of the *res gestae.* Therefore, the failure to give a limiting instruction did not constitute reversible error.

### 4. *Bloodhound Testimony*

Johnson contends that the trial court erred by allowing testimony about bloodhound tracking at the scene of the crime.

During the pretrial hearing, the Solicitor agreed not to introduce evidence with respect to bloodhound tracking. At trial, the State examined Horton, a SLED dog handler, to corroborate Hess' and Harbert's story about where they went when they fled from the RV. During his testimony, several references were made to the dog who helped Horton track the footprints.

Johnson argues that it was improper for the Solicitor to introduce evidence that he expressly agreed not to introduce. Johnson claims that this constitutes reversible error when the Solicitor's actions put the defendant in a position in which he is not able to rebut the evidence presented and that it may not be considered harmless error in a capital case. We disagree.

Testimony of a dog handler based upon his observation of a tracking dog may be properly admitted into evidence. *State v. Childs,* 299 S.C. 471, 385 S.E. (2d) 839

(1989); *State v. Brown,* 103 S.C. 437, 88 S.E. 21 (1916). Therefore, this evidence would be admissible but for the pretrial agreement that the Solicitor would not mention the dogs.

Upon a review of the record, it appears that the Solicitor made a good faith effort to comply with the agreement. Furthermore, Johnson has failed to demonstrate the prejudice resulting from this evidence.

Johnson also contends that the Solicitor committed reversible error when he referred to the bloodhounds in his closing argument. Johnson failed to object at the time of the trial, which demonstrates that the prejudicial effect of the matter was negligible. *State v. Arther,* 290 S.C. 291, 350 S.E. (2d) 187 (1986). Furthermore, the Solicitor's brief mention of "bloodhound" corresponds to the trial testimony. The jury is presumed to remember and know the trial testimony, and the Solicitor has the right to comment on its weight and state his version of the testimony. *State v. Pitts,* 256 S.C. 420, 182 S.E. (2d) 738 (1971). We find any error committed harmless beyond a reasonable doubt.

### 5. *Comments on Receipt & Understanding of Miranda Rights*

Johnson contends that the trial court erred in admitting evidence that Johnson had received and understood his *Miranda* rights and later requested an attorney. Johnson argues that this violated *Doyle v. Ohio* and its progeny.

*Doyle v. Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. (2d) 91 (1976), prohibits comment on a defendant's silence after he has received his rights. In *State v. Woods,* 282 S.C. 18, 316 S.E. (2d) 673 (1984), this Court held that the State could not, through the introduction of evidence that the defendant received and understood *Miranda* warnings, comment on defendant's silence.

In this case, there was testimony that Johnson was advised of his rights when he was arrested. The arresting officer testified that when Johnson was placed in the cell, Johnson started falling asleep within five minutes. When the officer removed the handcuffs and placed Johnson on the floor, he stated that he wanted a lawyer and then went to sleep for approximately four hours. Johnson argues that this evidence was extremely

prejudicial because it showed that he affirmatively exercised his rights after being advised of them. We disagree.

It is clear that this evidence was introduced to merely explain the events that occurred following Johnson's arrest and not for the purpose of commenting on Johnson's exercise of his rights. No witness ever commented on Johnson's silence. If anything, the presentation of this evidence was beneficial to Johnson in that it bolstered the contention that he had been drinking heavily.

### 6. *Reasonable Doubt Instruction*

Johnson contends that the court erred when it defined "reasonable doubt" because the instruction lessened the State's burden of proof. We disagree.

During the guilt phase of this trial, the judge defined reasonable doubt as a "substantial doubt," not an "imaginary doubt, or a fanciful doubt or a weak doubt or a slight doubt." Similarly, in the sentencing phase, the judge instructed the jury that a reasonable doubt is not a "weak doubt, or a fanciful doubt, but rather it is a doubt which the name suggests, a doubt for which you can give a reason. . . ." Similar instructions have been upheld by this Court. *See, e.g., Singletary v. State,* 281 S.C. 444, 316 S.E. (2d) 369 (1984); *State v. Spann,* 279 S.C. 399, 308 S.E. (2d) 518 (1983) *cert. denied,* 466 U.S. 947, 104 S. Ct. 2146, 80 L. Ed. (2d) 533 (1984); *State v. Woomer,* 278 S.C. 468, 299 S.E. (2d) 317 (1982), *cert. denied,* 463 U.S. 1229, 103 S. Ct. 3572, 77 L. Ed. (2d) 1413 (1983); *State v. Copeland,* 278 S.C. 572, 300 S.E. (2d) 63 (1982), *cert. denied,* 463 U.S. 1214, 103 S. Ct. 3553, 77 L. Ed. (2d) 1399 (1983).

We are aware that the Fourth Circuit Court of Appeals has adopted the view that trial courts should not define "reasonable doubt." *United States v. Moss,* 756 F. (2d) 329 (4th Cir. 1985). In *Moss,* however, the Fourth Circuit stated that mere attempts to define reasonable doubt do not constitute reversible error *per se.* To require reversal, the definition must be extremely incomprehensible or prejudicial. Jury instructions similar to those given in this case have not been held to constitute reversible error in subsequent Fourth Circuit cases. *Murphy v. Holland,* 776 F. (2d) 470 (4th Cir. 1985), *vacated on other grounds,* 475 U.S. 1138, 106 S. Ct. 1787, 90 L. Ed. (2d) 334 (1986).

While the United States Supreme Court has not forbidden the defining of "reasonable doubt," the Court recently struck down a Louisiana Court's definition of the standard as invalid and violative of the Fourteenth Amendment Due Process Clause. *Cage v. Louisiana,* — U.S. —, 111 S. Ct. 328, 112 L. Ed. 339 (1990). The "reasonable doubt" charge struck down there read:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*

*Id.* 111 S. Ct. at 329, quoting *State v. Cage,* 554 So. (2d) 39, 41 (La. 1989) (emphasis added by the United States Supreme Court).

The United States Supreme Court held this instruction to be "contrary to the 'beyond the reasonable doubt' requirement articulated in *Winship.*"[1] 111 S. Ct. at 329. The Court next proceeded to state how the charge was defective:

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to

---

[1] Referring to *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. (2d) 368 (1970).

allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Id.,* 111 S. Ct. at 329-30.

While the Court has thus in *Cage* set forth its general dislike of the word "substantial" in any definition of reasonable doubt, a term used in this state by virtually all trial judges for many decades, the Court also unmistakably stressed that such a word became reversible error because it was used *in combination* with the reference to "moral certainty" rather than evidentiary certainty. Indeed, we have recently adopted this reasoning in South Carolina per our decision, *State v. Manning,* 409 S.E. (2d) 372 (S.C. Sup. Ct. 1991) (Davis Adv. Sh. No. 21 at 20). In the instant case, unlike *State v. Manning,* no such fatal combination exists. Furthermore, we note that the charge found defective by the *Cage* Court included not only the modifier "substantial," but *also* defined reasonable doubt as "such doubt as would give rise to a grave uncertainty." *Id.,* 111 S. Ct. at 329. The lower court here did not charge such language. Therefore, we find no reversible error in the trial court's charge.

## C. SENTENCING PHASE

### 1. *Solicitor's Closing Argument*

Johnson attacks three portions of the Solicitor's closing argument in the sentencing phase: a suggestion that the victim begged for his life; a reference to the victim's family and the injection of the Solicitor's personal opinion. "A trial judge is vested with broad discretion in dealing with the range of propriety of closing argument, and ordinarily his rulings on such matters will not be disturbed. The Court must review the argument in the context of the entire record. The appellant has the burden of showing that any alleged error in argument deprived him of a fair trial." *State v. Bell,* 302 S.C. 18, 393 S.E. (2d) 364 (1990) *cert. denied,* — U.S. —, 111 S. Ct. 227, 112 L. Ed. (2d) 182 (1990).

First, Johnson contends that the Solicitor improperly suggested to the jury that the victim begged for his life. Upon counsel's objection that this statement was not supported by the evidence, the trial judge noted that while there was no evidence that Smalls said anything, there

was testimony that six shots were fired, Smalls screamed at some point between shots and that Johnson continued pulling the trigger after the gun was empty. The judge ruled that the Solicitor's argument would be within the confines of a jury argument and would not be such as would inflame the passion of a jury.

Upon review of the record, we find that the Solicitor's statement is an arguable inference from the evidence presented and that Johnson has failed to show how this statement deprived him of a fair trial.

Next, Johnson contends that the Solicitor improperly referred to the victim's family. During the penalty phase, Johnson's sister testified that she would visit him at the penitentiary for Christmas. In response, the Solicitor stated that the trooper's family could not go see him, they could only visit him at the grave.

Recently, in *Payne v. Tennessee*, — U.S. —, 111 S. Ct. 2597, 115 L. Ed. (2d) 720 (1991), the United States Supreme Court restated the law regarding evidence and arguments as to the impact of the crime on the victim and the victim's family. In that opinion, the High Court for the first time held that in a capital sentencing proceeding such evidence is not *per se* inadmissible pursuant to the eighth amendment. The Court noted that "the true measure of crimes is the injury done to society." 111 S. Ct. at 2605.

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated. 111 S. Ct. at 2609.

We hold that the argument made by the solicitor in this regard is relevant to the jury's decision and proper.

Finally, Johnson contends that the Solicitor made an improper reference to God and injected his personal opinion about the death sentence. Specifically, Johnson

complains of the following statement.

> You may hear some talk that it's not the Christian thing to do to electrocute somebody. And you know, I'm a relatively religious person and I have some beliefs but every once in a while my beliefs get all mixed up. And I wonder whether in a situation like this there is any God, because if there was a God, he would have let this man die when he tried to commit suicide and not take Bruce Smalls' life.
> Ya'll do what's right. I feel that it would have to be and would hope that you would agree a verdict of death by electrocution.

Johnson contends that the Solicitor injected his opinion about what God would do and what he would do in this case. We disagree. The Solicitor did not make any reference as to what God would do. In regard to his comment to "do what's right," we recently held that such a statement was not improper where the comment did not diminish the role of the jury. *State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364 (1990), *cert. denied*, — U.S. —, 111 S. Ct. 227, 112 L. Ed. (2d) 182 (1990).

Therefore, upon review of the record and considering the arguments for the State and the defense in relation to each other, we find that the Solicitor's closing argument did not constitute reversible error warranting a new trial.

### 2. *No Sympathy Instruction*

Johnson contends that the court erred when it instructed the jury that their sentencing decision should not be based on sympathy.

During the sentencing phase, the trial court instructed the jury as follows: "You cannot allow yourselves to be governed by *sympathy*, by prejudice, by passion or by public opinion." This Court has previously upheld the "no sympathy" instruction. *See State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364 (1990), *cert. denied*, — U.S. —, 111 S. Ct. 227, 112 L. Ed. (2d) 182 (1990); *State v. Cain*, 297 S.C. 497, 377 S.E. (2d) 556 (1988); *State v. Owens*, 293 S.C. 161, 359 S.E. (2d) 275 (1987). In addition, the United States Supreme Court has held that a charge instructing the jurors not to be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or

public feeling" did not violate the Eighth and Fourteenth Amendments. *California v. Brown*, 479 U.S. 538, 107 S. Ct. 837, 93 L. Ed. (2d) 934 (1987). This rule continued to be followed in *Saffle v. Parks*, 494 U.S. 484, 110 S. Ct. 1257, 108 L. Ed. (2d) 415 (1990), where the court reemphasized the earlier holding of *Brown*.

### 3. *Aggravating Circumstance—Double Jeopardy*

Johnson contends that the trial court erred when it allowed the State to use the fact that Smalls was an officer in the line of duty as an aggravating circumstance.

In the first trial, two aggravating circumstances were submitted to the jury: (1) armed robbery and (2) a police officer killed in the line of duty. The jury indicated on its sentence recommendation form that they found armed robbery to be an aggravating circumstance, but did not make any notation as to the other circumstance. Johnson argues that the submission of the aggravating circumstance of murdering a police officer on remand violates the prohibitions against double jeopardy.

S.C. Code Ann. § 16-3-20 (Supp. 1989) outlines the statutory circumstances that may be considered as aggravating or mitigating. It further provides that "[t]he jury, if its verdict be a recommendation of death, shall designate in writing, and signed by all members of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt." Johnson contends that the jury's failure to state that they found being a police officer to be an aggravating circumstance is the equivalent of an acquittal. We disagree.

When a jury has recommended a sentence of death but has either failed to find or rejected a particular aggravating circumstance, this does not constitute an "acquittal" of that aggravating circumstance for purposes of double jeopardy. *Poland v. Arizona*, 476 U.S. 147, 106 S. Ct. 1749, 90 L. Ed. (2d) 123 (1986). The same aggravating circumstance may be considered again during a subsequent resentencing proceeding following appellate review. Furthermore, at a pretrial hearing, defense counsel, with the express permission of Johnson, specifically waived any objection to the submission of this aggravating circumstance at trial or upon subsequent appeal in return for the State's agreement not to submit armed robbery.

### 4. *Sentence Recommendation*

Johnson contends that the lower court failed to convey to the jury that their sentencing recommendation would be followed in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. (2d) 231 (1985) and *State v. Bellamy*, 293 S.C. 103, 359 S.E. (2d) 63 (1987).

Although the trial judge used the statutory word "recommend" throughout his sentencing charge, it was related to prospective jurors that "the ultimate punishment of this defendant will be in your hands if you as a member of [the] trial jury will [sic] determine whether that punishment be the death penalty, which is the ultimate, or life imprisonment." This Court has previously upheld this instruction as being sufficient to satisfy the *Bellamy* requirement. *See State v. Middleton*, 295 S.C. 318, 368 S.E. (2d) 457 (1988).

### 5. *Mitigating Circumstance and Enmund Charge*

Johnson contends that the trial court erred in failing to instruct the jury on the statutory mitigating circumstance that he was "an accomplice in the murder committed by another and his participation was relatively minor" pursuant to S.C. Code Ann. § 16-3-20(C)(b)(4) (1976). We disagree.

The trial judge has a duty to review the statutory mitigating circumstances and submit any which may be supported by the evidence. S.C. Code Ann. § 16-3-20(C). In determining which statutory mitigating circumstances are supported, "the judge is concerned only with the existence of the evidence and not its weight." *State v. Bellamy*, 293 S.C. 103, 359 S.E. (2d) 63 (1987).

Johnson introduced a statement made by Hess, that Harbert rather than Johnson had killed Trooper Smalls.

Johnson contends that the trial court erred in failing to give an *Enmund* instruction as requested by defense counsel. *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. (2d) 1140 (1982) forbids the imposition of the death penalty upon an individual who did not personally take life or intend that life be taken. In *State v. Peterson*, 287 S.C. 244, 335 S.E. (2d) 800 (1985), this Court held that such a charge should be given in a case that involves conspiracy liability. However, this case did not involve conspiracy or accomplice liability. At the guilt phase, Johnson was found guilty of

the murder, not of conspiracy or accomplice liability. Hence, the jury need not consider any evidence regarding conspiracy or accomplice liability at the sentencing phase. Those are not the crimes for which the defendant was being sentenced.

Johnson argues in the alternative that a "mere presence" charge should have been given. His theory is that if the evidence shows that either Johnson was guilty or innocent, then the jury should have been instructed that mere presence at the scene is not sufficient evidence to convict. We find this assertion to be without merit and conclude that any error would be harmless beyond a reasonable doubt in light of the admission of guilt Johnson made in his statements during the closing argument to the jury.

6. *Defendant's Silence and No Adverse Inference Charge*

Johnson contends that the trial court erred when it commented on his failure to testify and failed to give a "no adverse inference" charge.

First, Johnson complains that the trial court "primed" several jurors during *voir dire* to anticipate Johnson's testimony at the sentencing phase. We disagree. The judge's comments during *voir dire* were limited to very general statements that the juror should hear from both sides before forming an opinion as to the defendant's guilt. The *voir dire* examination focused on each juror's ability to be fair and impartial. In addition, the jury was specifically instructed during the guilt phase that "the fact that a defendant does not testify in his own behalf cannot and must not be considered against him under any circumstances or in any manner whatsoever."

During Johnson's argument in mitigation, the court instructed Johnson that he was not to testify but was expected to present argument in light of his best understanding. We do not believe that this constituted a comment upon Johnson's failure to testify.

Johnson also contends that the court erred when it failed to give a "no adverse inference" charge during the sentencing phase. We disagree. While it is better that the charge be given in both the guilt and sentencing phases, this court has held that failure to give the charge is not reversible error when no request is made absent other cir-

cumstances. *State v. Bellamy*, 293 S.C. 103, 359 S.E. (2d) 63 (1987); *State v. Middleton*, 295 S.C. 318, 368 S.E. (2d) 457 (1988). Here, counsel failed to request an adverse inference charge. In addition, neither the Solicitor nor the trial court made improper references concerning Johnson's failure to testify. Therefore, we find the error harmless beyond a reasonable doubt.

Lastly, we have reviewed the entire record and conclude the death sentence was not the result of passion, prejudice or other arbitrary factors, and the evidence supports the jury's finding of the aggravating circumstance. S.C. Code Ann. § 16-3-25(C)(1)-(2) (1985). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *See, State v. Green*, 301 S.C. 347, 392 S.E. (2d) 157 (1990), *cert. denied*, — U.S. —, 111 S. Ct. 229, 112 L. Ed. (2d) 183 (1990); *State v. Patterson*, 299 S.C. 280, 384 S.E. (2d) 699 (1989).

For the reasons discussed above, Johnson's conviction and sentence are

Affirmed.

GREGORY, C.J., and HARWELL and CHANDLER, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. I would find that the trial judge erred in failing to instruct the jury on the statutory mitigating circumstance that the appellant was "an accomplice in the murder committed by another and his participation was relatively minor," pursuant to S.C. Code Ann. § 16-3-20(C)(b)(4) (1976). I would reverse and remand for a new sentencing proceeding.

The trial judge has a duty to instruct the jury as to any statutory mitigating circumstances which may be supported by the evidence. S.C. Code Ann. § 16-3-20(C) (1976); *State v. Bellamy*, 293 S.C. 103, 359 S.E. (2d) 63 (1987). In deciding which statutory mitigating circumstances may be supported, the judge is to concern himself only with the *existence* of evidence and not its *weight. Id.* This principle was reaffirmed in *State v. Caldwell*, 300 S.C. 494, 388 S.E. (2d) 816 (1990). In *Caldwell*, this Court remanded for a new sentencing proceeding because evidence existed that the defendant was suffering from a mental disorder, but the judge failed to instruct the

jury on this mitigating circumstance. Similarly, in the present case, evidence existed to support the inference that the appellant was an accomplice and that his participation was relatively minor.

Connie Hess was arrested in connection with the murder of Trooper Smalls along with appellant and Curtis Harbert. Hess gave several statements to the police, including a statement introduced into evidence which indicated that Curtis Harbert, not Johnson, murdered Trooper Smalls. Clearly, Hess' statement provides a basis for a jury instruction on the statutory mitigating circumstance at issue.

The majority acknowledges that the statement indicated Johnson had no involvement with the murder. Nevertheless, the majority reasons that the evidence only indicated that either Johnson shot Smalls or that Johnson was not involved at all. I disagree.

Clearly, the statement constituted evidence that Johnson was an accomplice, although his involvement may have been relatively minor. By disregarding evidence of the mitigating circumstance and determining that a jury instruction was not warranted, the majority obviously bases its determination upon the *weight* rather than *existence* of the evidence, as the law requires. *State v. Caldwell, supra; see State v. Bellamy, supra; State v. Pierce*, 289 S.C. 430, 346 S.E. (2d) 707 (1986).

I would reverse and remand for a new sentencing proceeding.